OMEGA INTERNATIONAL CORP., David J. Sheehan, Plaintiffs,

v.

INTERSTATE STEEL DE PUERTO RICO, INC., Defendant.

Civ. No. 82–2519.

United States District Court, D. Puerto Rico.

July 9, 1984.

Rexach & Pico, Maria Emilia Pico, Hato Rey, P.R., for plaintiffs.

David Indiano, San Juan, P.R., for Sea Land, Jimenez and Fuste.

Andres Garcia Arregui, Santurce, P.R., for Fullerton Int'l.

Doval, Muñoz, Acevedo, Otero & Trias, Omar Cancio Martinez, San Juan, P.R., for General Elec.

Colorado, Martinez & Odell, Patrick Duffy O'Neill, Hato Rey, P.R., for defendant and intervenors Russel, Steel Master, and Arrow Steel.

Figueroa & Nassar, Hato Rey, P.R., for Diversified.

Jose Gonzalez Borgos, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., for Chase Manhattan Bank.

## ORDER

PIERAS, District Judge.

On February 27, 28 and 29, 1984 an evidentiary hearing was held to determine whether time deposit No. 07–4622 in the amount of $50,000.00 dated 1–24–83 in the name of defendant herein, Interstate Steel of Puerto Rico, was, as a matter of law, held in pledge by The Chase Manhattan Bank on March 10th, 1983. (Joint Exhibit 1). Said time deposit was attached by plaintiff, Omega International Corp., on March 10th, 1983 pursuant to a Writ of Attachment issued by this Court and served on Chase as a pre-judgment remedy to secure the effectiveness of the Judgment that may be entered against defendant Interstate Steel in this case.[1] (See Joint Exhibit 4).

As provided in Rule 302 of the Federal Rules of Evidence, and Rules 14 and 16 of the Rules of Evidence of the Commonwealth of Puerto Rico, the Court imposed on Chase the burden of establishing the existence of a valid pledge agreement covering the time deposit. Under the Laws

---

1. At a hearing held on March 23rd, 1983 Chase was ordered by this Court to keep under its custody the $50,000.00 cover under time deposit 07–4622 at the same rate of interest and not to dispose of it until further order of this Court.

of the Commonwealth of Puerto Rico all property is presumed to be free and clear of liens until the contrary is established. *González v. Hawayek*, 71 DPR 528 (1950), *Delgado v. Rodríguez*, 71 DPR 445 (1950).

## I.

Consonant with its pretrial memorandum, Chase attempted to establish that the $50,000.00 represented by time deposit 07–4622 issued by Chase in the name of defendant Interstate Steel of Puerto Rico, Inc. (Interstate) actually belongs to another entity known as Arrow Steel Manufacturing and Processing Corp. (Arrow). In such an event, Chase argues time deposit 07–4622, which at the time of the attachment was in the name of Interstate, would have been covered by a pledge agreement signed by Arrow in 1981 (Joint Exhibit 2). In support of this proposition Chase presented the testimony of Mrs. Amparo Vargas, Assistant Vicepresident of Chase in charge of commercial loan portfolios.

Mrs. Vargas testified that Chase had a commercial relationship with defendant Interstate dating back to 1979; that Chase granted loans to Interstate totalling $1,320,000.00 receiving as collateral for these loans certificates of deposits belonging to a Mr. Leo Schaeffer, Mrs. Jannette Schaeffer and Arrow. She also testified that neither of these individuals or entities had at any time outstanding loans with Chase.

Mrs. Vargas further testified that on December 22nd, 1982 a meeting was held between officers of Interstate and Chase to discuss the former's default of the terms of the commercial loan granted by Chase. It was decided at said meeting to postpone foreclosure on the loan in consideration of certain representations made by Interstate. The agreements reached at that meeting were reduced to writing in the form of a letter of that same date. (Joint Exhibit 5).

A loan note for the principal amount outstanding on that date, December 22nd., 1983, was also subscribed by Interstate. (Joint Exhibit 9). The collateral in Chase's possession to secure the outstanding loan on that date was described in the letter agreement of December 22nd., 1982 (Joint Exhibit 5) as follows:

> "$100,000.00 time deposit in the name of Leo Schaeffer, $100,000.00 time deposit in the name of Jannett Schaeffer and $50,000.00 time deposit in the name of Arrow Steel Manufacturing & Processing Corp."

Mrs. Vargas testified that Chase held no other collateral.

Mrs. Vargas testified that the $50,000.00 time deposit in the name of Arrow identified in the letter agreement of December 22nd., 1982 was in fact a certificate of deposit issued by Citibank on October 27, 1982, maturity date January 13, 1983, Certificate No. 207532. (Joint Exhibit 6). She also testified having sent a letter on January 4th, 1983 to Citibank, N.A., requesting that on maturity of Arrow's Certificate (January 13, 1983) a manager's check be issued in favor of Chase Manhattan Bank for the principal and accumulated interest (Joint Exhibit 9); she added that a check in the principal amount of $50,000.00 was issued to Chase Manhattan Bank, N.A. for account of Arrow Steel Manufacturing & Processing on January 21st, 1983. (Joint Exhibit 7). It is Chase's contention and Mrs. Vargas' testimony that this check[2] was used to purchase on January 24th, 1983 time deposit 07–4622 here in controversy. In a very brief and concise statement Mrs. Vargas indicated having ordered the purchase of said certificate on her own initiative in Interstate's name and in so doing committed an error.

The interlocking relationship between Interstate and Arrow, the commingling of

---

**2.** We note that no transmittal documents were presented by Chase to corroborate Mrs. Vargas testimony as to the monies used to purchase the certificate in controversy. In its post-trial memorandum Chase points to a certain hand written notation on the reverse side of the $50,000.00 Citibank manager's check which corresponds to the certificate in controversy. Nonetheless, no testimony was given as to the identity of the person who made such notation nor the date on which it was made.

assets between these two corporations, and most importantly, Chase's own participation in the transferring of funds from one corporation to another, from individuals to corporations and back, and to accounts in Nassau, Bahamas and Geneva, Switzerland, without observing the most elementary formalities for such transactions, convinces us that no error was committed by Chase in opening the time deposit in controversy. Moreover, as it was clearly established on her cross-examination, Mrs. Vargas and Chase, often participated in this diversion of funds acting solely on oral instructions for which there was no written confirmation. Against such background, this Court cannot lend credence to the proposition that time deposit 07–4622 was the only instance in which Chase acted on its own initiative without receiving instructions from the interested party. Of particular interest is the fact that the alleged error in opening the time deposit was not uncovered by Chase until after plaintiff levied a proper attachment on the Certificate in the name of Interstate. Although almost two months had transpired since the opening of the time certificate to the time of the attachment, the fact that neither Chase nor Arrow, as owner of the Certificate, made any attempt to correct the error, militates against the existence of any such error. The fact that Arrow, as party [3] to this action with adequate notice of the hearing regarding the validity of the pledge, did not come forth with evidence of its rightful title to the certificate in controversy, convinces us that no such evidence exists.

In the cross-examination of Mrs. Amparo Vargas, plaintiff introduced into evidence a total of 164 documents from Chase's own files; these documents and Mrs. Vargas'

often confusing explanations of the various transactions involving Interstate, Arrow and related individuals, constitute the basis for our conclusion as herein above stated. We shall briefly examine these.

The origin of Citibank's certificate No. 207532 (Joint Exhibit 6) is a prime example of the nature of the transactions Arrow, Interstate, Mr. Leo Schaeffer,[4] and Chase were involved in prior to the attachment. We note that this Citibank certificate precedes the one in controversy. Mrs. Vargas testified that Citibank certificate No. 207532 was originally a $50,000.00 bearer certificate issued by Banco Regional de Bayamón; Chase alleged it held that certificate in pledge. However, Mrs. Vargas could not identify from the documents in Chase's possession whether it was pledged by Arrow, Interstate or Mr. Leo Schaeffer. See plaintiff's exhibits 164 and 165. As a matter of fact, Mrs. Vargas admitted that in these Exhibits as in numerous others (eg. Exhibit 145), the names Leo Schaeffer, Arrow and Interstate were used interchangeably.

Sometime in October, 1982, the aforementioned bearer certificate issued by Banco Regional was converted into an Arrow Citibank certificate. Mrs. Vargas' testimony was not clear as to how this change came about. After hearing the testimony of Mrs. Milagros Molina, an officer of Citibank who appeared on Chase's behalf, it seems that on maturity of the bearer certificate a new certificate was issued in the name of a Mr. Raúl Rivera.[5] The evidence on record (Chase's Exhibit A) appears to indicate that the certificate to the name of Mr. Raúl Rivera was also "issued incorrectly", that it was to be cancelled and a new

---

**3.** Arrow intervened in the early stages of this action to claim as its property certain equipment and material attached by plaintiff as Interstate's. Neither in any of its motions nor in the complaint to intervene did Arrow allege any interest in the certificate attached by plaintiff.

**4.** Up to October 1982 Mr. Schaeffer was the president and the person authorized to sign on behalf of both Interstate and Arrow.

**5.** Mrs. Vargas was not able to ascertain whether Mr. Rivera was an officer or employee of either Arrow or Interstate. Plaintiff's Exhibit 55 in Chase's possession identifies Mr. Rivera as an officer of Interstate.

one for the same amount issued to Arrow.[6] The record demonstrates that Chase was instrumental in initiating the conversion of Mr. Rivera's certificate into an Arrow certificate.[7] (See plaintiff's Exhibit 14).

Assuming certificate 207532 in the name of Arrow was at some time in Chase's possession, as testified by Mrs. Vargas, the fact is that even though payment of principal and interest on said certificate was requested by Chase on January 4th, 1983 all that Chase received from Citibank was a $50,000.00 check with no reference to the Certificate. Even the reverse side of Citibank's certificate noting the payment effected makes no mention of the form of payment. Moreover, it is significant that the 90-day interest accrued on said Certificate which by Mrs. Vargas' admission totalled over $1,000.00, was not paid to Chase as requested on January 4th; as a matter of fact, Chase admitted having no knowledge of the whereabouts of the interest payment.[8] Mrs. Molina from Citibank testified that the interest accrued on the Certificate was paid to Arrow on January 13, 1983. If such was the case, we are forced to conclude that Arrow was the holder and on maturity presented Certificate No. 207532 to Citibank for collection since by its own terms "the principal and interest shall be payable only at maturity and upon presentation and surrender of this Certifi-

cate to Citibank..." (Joint Exhibit 6). Thus, if Chase ever held Arrow's certificate No. 207532 in pledge, said pledge was extinguished upon its return to Arrow for the collection of interests. Art. 1145 of the Civil Code provides:

"The accessory obligation of a pledge shall be considered as remitted, when the thing pledged after having been delivered to the creditor, should be in the possession of the debtor."

Finally, had it been Chase's or Arrow's intention that the $50,000.00 received from Citibank were to be used to open a certificate in the name of Arrow, Chase should have secured an officer of Arrow to confirm the transaction. However, the evidence reveals a totally opposite situation. The only document in Chase's files alluding to the time certificate issued on January 24th, 1983 is an assignment signed by Mr. Leo Schaeffer.[9] Even the authenticity of this document of assignment dated 1-24-83 is gravely in doubt as the evidence received by this Court reflects that Mr. Leo Schaeffer had signed at least two blank forms of assignments which were kept in Chase's files for some unexplained purpose. (Exhibits 119, 120).

■ In view of the foregoing we must conclude that Chase did not prove by the preponderance of the evidence that Certifi-

6. It is still not clear to this Court whether in October 1982 there was one or more than one certificates of deposit issued by Citibank to the name of Arrow Steel with maturity date in January, 1983. Mr. Rivera's cancelled certificate was not presented in evidence.

7. The conversion of the bearer certificate into an Arrow certificate is not the only instance in which Chase participated in the transferring of funds from one corporation or individual to another. Following are some examples:
the interest accumulated on certificates of deposit totalling over $1,000,000.00 belonging to Arrow and Interstate Steel were, as per Mrs. Vargas instructions, to be credited to Mr. Leo Schaeffer's personal account in Nassau, Bahamas. (Plaintiff's Exhibit 38).
the debiting of an Interstate account for $100,000.00 and crediting the amount to an account of Arrow Steel was ordered by Mr. Miguel Pomales, officer of Chase. (Plaintiff's Exhibit 48).

The Chase Manhattan Bank in Hato Rey was instrumental in transferring funds of Interstate into an account in Nassau, Bahamas (See Exhibit 56).

8. Under Puerto Rico Law the interest accrued on any monies pledged are due and owing to the pledgor. Art. 1767 of the Civil Code of Puerto Rico, 31 LPRA 5026.

9. On that date Chase, by its own admission had knowledge that Mr. Leo Schaeffer was no longer an officer of Arrow. It had been so informed by Citibank, by the new President of Arrow, Mr. Antonio Flores, and finally Chase had in its possession a corporate resolution from Arrow so indicating. Moreover, as it was fully demonstrated to this Court, the times on which Mr. Leo Schaeffer executed documents on behalf of Arrow, the assignment would so indicate. (Plaintiff Exhibits 126 and 96).

cate No. 07–4622 belongs to an entity other than Interstate. Plaintiff having established the issuance by Chase of a certificate of deposit in the name of Interstate, we must presume, as a matter of law, that said certificate is property of Interstate and that it was issued for consideration. Such result is the clear mandate of Rule 16 of the Puerto Rico Rules of Evidence, which establishes:

"(21) that a promissory note or draft was delivered or endorsed upon due compensation.

(38) That when there is a written contract there has been due consideration"

The effect is that the party against whom these presumed facts operate has the burden not only of bringing forth evidence to establish the non-existence of the presumed facts, but said evidence must be of such nature as to persuade this Court that the non-existence is more probable than the existence of the presumed facts. Rule 14 of the Rules of Evidence of the Commonwealth of Puerto Rico. The evidence presented by Chase did not have such an effect. On the contrary, the continuous transferring of funds between Arrow and Interstate convinces us that even if money belonging to Arrow [10] was used to purchase the Interstate certificate, Arrow, as in previous occasions, received due consideration. Thus, we find that the purported error in opening the Interstate certificate was not in fact committed. Rather, the error was discovered after the fact, when it became obvious the "correct" thing would have been to open the certificate in Arrow's name. Such shifting of funds cannot be effective against a third party.

10. As concluded earlier, Chase did not even establish this fact.

11. Article 1756 provides:
"The following are essential requisites of the contracts of pledge and of mortgage:
  1. That they be constituted to secure the fulfilment of a principal obligation.
  2. That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.
  3. That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it,

## II.

In the event the Court finds the certificate is property of Interstate Chase would have the Court conclude that the attachment levied on time deposit No. 074622 is subject to Chase's lien upon same by reason of an earlier pledge agreement executed by Interstate Steel of Puerto Rico, Inc. with Chase. (Joint Exhibit 3). In effect we are asked to decide whether certificate of deposit issued on January 24th, 1983 was security for a loan note executed by Interstate on December 22nd, 1982.

For this alternate approach Chase bases its claim to certificate 074622 in the rights protecting a secured pledgee by Articles 1756–1772 of the Puerto Rico Civil Code, 31 LPRA 5001 to 5031. Under these provisions a creditor may retain in its possession the object given in pledge until the principal obligation secured by the pledge is extinguished by payment or as otherwise contemplated in the Civil Code. Art. 1765, 31 LPRA 5024. In order for a contract of pledge to be valid it must be executed in strict compliance with the requirements of Articles 1756 and 1762 of the Civil Code, 31 LPRA 5001 and 5021.[11] In addition, the Civil Code establishes that a pledge shall not be effective against a third person when evidence of its date is not established by authentic document. Art. 1764, 31 LPRA 5023.

Bearing in mind the above legal precepts and the evidence presented to this Court, we have examined joint exhibit No. 3 which in pertinent part provides:

that they are legally authorized for the purpose.
Third persons, strangers to the principal obligation, may secure the latter by pledging or mortgaging their own property." 31 LPRA 5001
Article 1762 provides:
"Besides the requisites mentioned in Article 1762 of this title, it is necessary, in order to constitute the contract of pledge, that the pledge should be placed in possession of the creditor or of a third person by common consent." 31 LPRA 5021

"As security for the payment of this note as well as any other note, loan ..., the undersigned hereby pledges to the Bank the following property:

*All securities now in your possession or control securing any of my liabilities to you.*

Any other property, securities or monies of the undersigned or of any of them in the possession of the bank or any interest of any of them in any property, securities or monies in the possession of the Bank are hereby expressly covered and are made subject to the terms and conditions of this pledge to secure the obligation hereof."

The language above cited is clear, the securities pledged are properly identified as those securities "now in the possession or control of the bank."[12] Given the undisputed fact that the loan note was signed on December 22nd, 1982 and the certificate of deposit in controversy was issued on January 24th, 1983, we cannot conclude that said certificate was a security in possession of the bank at the time the loan note was signed; it was not even in existence at that time.

In its pre-trial and post-trial memorandum Chase insists that the loan note executed on December 22nd, 1982 extends not only to securities in possession of the Bank at the time, but also to any other securities that the Bank may thereafter have received. Chase urges this argument notwithstanding the clear description of the securities pledged. In support of this proposition Chase cites *In Re Las Colinas*, 294 F.Supp. 582 (1968), vacated and remanded 426 F.2d 1005 (1st Cir.1970), affirmed 453 F.2d 911 (1st Cir.1971), Cert. den. *Banco Popular v. Las Colinas, Inc.*, 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972). We do not find this legal authority persuasive nor applicable to the facts of this case. From a reading of *In Re Las Coli-nas*, it is evident that a pledge agreement was in existence whereby all securities already delivered "or to be delivered in the future" to the Bank would constitute the security for the payment of debts. We have noted that similar language is included in Chase's own forms of pledge agreements, such as the one executed by Arrow (Joint Exhibit 2). However, such language does not appear in the loan note executed by Interstate which we are requested to interpret; there is simply no reference in the description of the property pledged in the loan note document to any property to be delivered to the Bank in the future. Certainly *In Re Las Colinas, supra*, cannot stand for the proposition that notwithstanding the description of the securities given in pledge, said contract will extend to any and all securities thereafter delivered until the end of time.

It is possible that a particular pledge may be effective against third persons notwithstanding the fact that a particular security is actually delivered after the agreement was signed. In such case, the date on which the security is delivered to the pledgee would have to be indubitably established; otherwise, the safeguards against fraudulent transfers which the drafters of the Code sought to establish by requiring that the date of the pledge be shown by authentic document, could be easily circumvented.[13] 31 LPRA 5023. We note that *In re Las Colinas, supra*, the Court could have been satisfied with the certainty of date requirement contained in 31 LPRA 5023. In that case, the lis pendens caused to be recorded by the Bank in the Registry of the Property prior to the creditor's claim of the pledged property gave the transaction the certainty of date required by the Civil Code in order for the pledge to be effective against a third party. Art. 1181 Civil Code, 31 LPRA 3282. Such certainty

---

**12.** The third to last paragraph of the loan note is simply a standard set-off clause which in its proper context cannot have the effect of broadening the scope of the property given in pledge.

**13.** The contract of pledge is not deemed perfected until the object of the pledge is delivered to the pledge holder. See Scaevola, *Codigo Civil*, Tomo XXIX, pages 340–341, Ed. 1955 and Puig Brutau, *Fundamentos de Derecho Civil*, Tomo III, pages 528–548.

of the date on which the security was delivered is obviously missing in this case.

As a matter of fact, the evidence strongly suggests that the certificate in controversy was not delivered to Chase until after the attachment. We note that when the attachment was executed, Chase refused to deliver the time deposit to the U.S. Marshal and that it was not until the hearing held on March 23, 1983 that the bank produced the time deposit and was ordered to keep it in trust. Moreover, the only document evidencing delivery to Chase of the time deposit bears date four days after the attachment. Exhibit 133 is a receipt issued by Chase on March 14th, 1983 which indicates that on that date Chase "received from Interstate Steel of Puerto Rico, Inc. time deposit 07–4622 for 50M dated 1–24–83 due 3–24–83 at 8.0625% in the same plus assignment".

Finally, as discussed, *supra*, a document dated 1–24–83 entitled "Assignment" was executed by Mr. Leo Schaeffer whereby time deposit 07–4622 was purportedly assigned to Chase. (See Exhibit 137) We must, thus, examine whether, even in the absence of a valid pledge agreement, this assignment is sufficient to confer upon Chase a preferential right or title over plaintiff to the proceeds of time deposit 07–4622. Articles 1416 and 1181 of the Civil Code preclude a finding in favor of Chase. Article 1416 of the Civil Code provides:

> "The assignment of a credit, right, or action *shall produce no effect against a third person* but from the time the date is considered fixed, in accordance with sections 3273 and 3282 of this title.
>
> If said assignment involves real property, from the date of its entry in the registry." (31 LPRA 3941) (emphasis added)

As it affects third persons, the date of a private instrument shall only be considered from the date on which it may have been filed or entered in a public registry. Article 1181 of the Civil Code, 31 LPRA 3282.

It follows from these legal precepts that in order for an assignment to be effective against a third party, evidence of its date must be established by public instruments. The Civil Code defines public instruments as documents authenticated by notary or by a competent public official. 31 LPRA 3271. As public instruments, they constitute evidence of the date of execution of the document. 31 LPRA 3273. Thus, as with the contract of pledge, there is a certainty of date requirement which is meant to prevent fraudulent transfers to the detriment of bonafide third parties, e.g. plaintiff in this case. See Puig Brutau, *Fundamentos de Derecho Civil*, 1956, T. II, Vol. II, p. 234; Scaevola, *Código Civil*, 2da. Ed., 1970, T. XXIII, Vol. 2, p. 627.

The assignment dated 1–24–83, Exhibit 137, was not executed before notary public as required by law to be effective against third parties. Furthermore, the fact that Chase had in its possession dateless blank forms of assignment identical to Exhibit 137 signed by Mr. Leo Schaeffer cannot be taken lightly (Exhibits 119, 120); this, coupled with the fact that Exhibit 133 establishes that the assignment dated 1–24–83 was not delivered to Chase until after the attachment, creates grave doubt as to the date on which the assignment was actually executed. As such, it is impossible to ascribe to Exhibit 137 the certainty of date required by law. Not only would it be contrary to law, but a grave miscarriage of justice would ensue were we to declare, in the absence of a document duly executed before notary public, that an assignment effective against third parties was indeed executed on 1–24–83.[14]

### III.

Having Chase failed to establish by the preponderance of the evidence that the certificate in controversy belonged to an enti-

---

**14.** We also note that the assignment document was executed by Mr. Leo Schaeffer in his individual capacity and not as an officer of Interstate Steel. As in the case of Arrow, we take notice of the fact that whenever Mr. Leo Schaeffer signed on behalf of Interstate Steel, it would so appear from the documents. (See Exhibits 125, 99 and 95).

ty other than Interstate or that it held in its possession a valid pledge agreement or assignment covering time deposit No. 07–4622 prior to the attachment by plaintiff in this case on March 10th, 1983, it is hereby

ORDERED, ADJUDGED, AND DE-CREED, that Judgment be entered against Chase Manhattan Bank and for plaintiff. Chase is hereby ordered to deliver to plaintiff the proceeds of T.D. 07–46622 plus all accrued interest from the date of its issuance until payment is made and legal interest on the entire amount from this date until full payment, plus costs.