In re **ALMACENES GIGANTE, INC.** D/B/A Borinquen Gigante D/B/A Bayamon Gigante, Inc. D/B/A VAR Corporation, Rye Corporation, Debtor.

Pedro J. **FUSTE,** Trustee, Plaintiff,

v.

**EUROBANK & TRUST COMPANY,** Defendant.

Bankruptcy No. B–91–03635(ESL). Adv. No. 92–0032.

United States Bankruptcy Court, D. Puerto Rico.

Oct. 13, 1993.

Sergio A. Ramirez de Arellano, San Juan, PR, for plaintiff/trustee.

Horacio R. Subira, Jr., Subira & Arrillaga, San Juan, PR, for Eurobank & Trust Co.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case is before the court upon the Motion for Summary Judgment filed by Plaintiff, trustee Pedro J. Fuste, the opposition thereto by defendant Eurobank & Trust Company, and the subsequent replies by both parties. The issues before the court include the validity of a Pledge Agreement constituted to secure a loan for $1,000,000.00 made by defendant to debtor Almacenes Gigante and whether debtor's payment of $78,605.18 to reduce the principal of the above-mentioned loan constitutes a preferential transfer. Defendant argues that it has a right to offset the amount kept in the time deposit account pledged to secure the debt, against the amount of the outstanding debt. After consideration of the briefs filed this court now makes the following findings of fact and conclusions of law.

### Findings of Fact

There are no factual issues in dispute in this case. A voluntary Chapter 11 bankruptcy petition was filed by Almacenes Gigante on May 23, 1991. Pedro Fuste was appointed operating trustee on November 27, 1991. The case has been subsequently converted to chapter 7.

In mid October 1990 Mr. Isaias Mora Ramirez ("Mora") met with Mr. Jose J. Canino ("Canino"), Executive Vice–President of Eurobank to discuss the possibility of financing debtor's operations. Eurobank agreed to make a loan for $1,000,-000.00 even after being advised that debtor had no financial statements due to a prior embezzlement of funds in an amount ranging from one to two million dollars, which had not been resolved at that time. Euro-

bank relied on Mora's personal financial statements, the financial statements of Vandel of Puerto Rico, Inc., oral references, visits to one or more of debtor's and Vandel's stores and routine reference checks with Banco Central. Debtor never supplied Eurobank with its financial statements, financial projections, business plans, inventory or account receivable schedules or any other type of financial information.

Canino testified that Eurobank conditioned the loan on the personal guarantee of Mr. Mora and his wife and a deposit of $500,000.00 from the personal patrimony of Mr. Mora to be pledged to Eurobank as collateral for the $1,000,000.00 loan. The Loan Agreement, the Pledge Agreement and the personal guarantee were executed on November 7, 1990 before Notary Public Jorge L. Mendin. Eurobank would disburse to debtor twice the amount pledged, up to a maximum of $1,000,000.00 outstanding at any time.

The Pledge Agreement was signed by Mr. Mora acting on behalf of debtor Almacenes Gigante. The Agreement states in its paragraph 11 that the object of the pledge are all the funds deposited in debtor's time deposit account No. 01–08–000248 of Eurobank up to the sum of $500,000.00.[1]

The first of the six deposits made in the time deposit account No. 01–08–000248 took place on November 21, 1990, two weeks after the execution of the Pledge Agreement, in the amount of $113,400.00. The second deposit was made on November 26, 1990 in the amount of $100,000.00. The third deposit made on December 18, 1990 was composed of seven checks the total sum amounting to $57,000.00. The fourth deposit was made on December 28, 1990 in the amount of $25,000.00 and the fifth on February 7, 1991 for $20,000.00. On February 8, 1991 a deposit was made in the amount of $181,394.82 by check issued by J. Pica & Cia., Inc. on even date payable to VAR, Corp. in the amount of $260,000.00. The balance of $78,605.18 was applied to

reduce the principal balance of the loan. It should be noted that the terms of the loan did not require payments to the principal prior to the note's maturity date.

On or about February 12, 1991 the certificate of deposit number 01–08–000248 was issued in the name of debtor in the principal amount of $500,000.00. As of November 15, 1991 the deposit account had a balance of $530,443.93.

The disbursements made by Eurobank to debtor pursuant to the Loan Agreement from November 21, 1990 to May 2, 1991 amount to $1,078,000.00. The balance of the note on the date of the petition was $999,394.82.

As of November 7, 1990 and at least until May 23, 1991 debtor failed to comply with certain terms and conditions of the contract, Eurobank, however, did not require compliance. Eurobank has made no attempt to collect the amounts owed from the guarantors of the note, Mr. Mora and his wife.

Based on the aforestated facts which stand uncontested plaintiff argues that the Pledge Agreement signed on November 7, 1990 is invalid because it contravenes with Article 1762 of the Civil Code, 31 L.P.R.A. § 5021. Said article establishes that in order to constitute a pledge agreement the object pledged must be placed in the possession of the pledgee or creditor which in this case debtor failed to do until after the execution of the Pledge Agreement. Furthermore, plaintiff argues that Article 1764 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5023 states that the pledge will not be effective against third parties if evidence of the date on which it was constituted is not shown by an authentic document. The constitution of the pledge takes place at the time the object of the pledge is turned over to the creditor. Plaintiff contends that in spite of the authentication of the pledge by Notary Public, the date of

---

**1.** Paragraph 11 of the Pledge Agreement states that,

 11. Los bienes dados en prenda son los siguientes:

 (a) Todos los fondos depositados en el "Time Deposit" del DEUDOR Numero 0108000248 con el Banco hasta la suma de $500,000.00.

the constitution of the pledge is not shown by an authentic document.

In addition, plaintiff states that the Pledge Agreement was constituted in a fraudulent manner because it gave the false impression that the object pledged, that is, at least $500,000.00 contained in the time deposit account, existed at the time the Pledge Agreement was executed when in fact the account itself was not opened until some time later and the total amount object of the pledge was not completed until three months after. For this reason plaintiff argues that the pledge should be avoided as a fraudulent transfer in accordance with section 548 of the Bankruptcy Code.

Also, plaintiff contends that the payment of $78,605.18 made on February 8, 1991 to be applied to the loan principal constitutes a preferential transfer and thus avoidable. Finally, plaintiff requests that all the monies deposited in the time deposit account at Eurobank plus the interest accrued and the $78,605.18 payment to the loan principal be turned over to the estate.

Defendant argues that under section 553 of the Bankruptcy Code he has an unqualified right to set off the amounts owed to it by debtor against the amount held in debtor's time deposit, that is, even if the pledge is found to be invalid and unenforceable.

### Conclusions of Law

Summary Judgment may be entered if:

the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Cattret,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Having the parties in this case agreed that there are no issues of fact in dispute and only issues of law to be determined this court proceeds to enter summary judgment.

### A. *Pledge Agreement*

The Civil Code of Puerto Rico establishes the requirements for a valid pledge agreement in its Article 1756,

The following are essential requisites of the contracts of pledge and mortgage:

(1) That they be constituted to secure the fulfillment of a principal obligation.

(2) That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.

(3) That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for that purpose.

31 LPRA § 5001. Furthermore, Article 1762 adds that: Besides the requisites mentioned in section 5001 of this title, it is necessary, in order to constitute the contract of pledge, that the pledge should be placed in possession of the creditor or of a third person by common consent.

31 L.P.R.A. § 5021. Thus, the pledge is not perfected until the object of the pledge has been placed in the possession of the creditor or a third party of common consent. The well respected and oft-cited Spanish commentator Puig Brutau has expressed that one cannot pledge future things because they cannot be possessed, although in such case the parties may enter into a promise to constitute a pledge agreement. III–3 Puig Brutau, Fundamentos de Derecho Civil at p. 27 (3rd Ed.1983, Bosch).

But most important to us is Article 1764 which establishes that "[a] pledge shall not be effective against a third person, when evidence of its date is not shown by authentic documents." 31 L.P.R.A. § 5023. This statute is one of strict compliance. "[T]he authentic document requirement is intended to be a formal and absolute rule". *In re Supermercados San Juan, Inc.,* 575 F.2d 8 (1st Cir.1978) *citing Ramos Mimoso v. Superior Court,* 93 P.R.R. 538 (1966); *see also F.D.I.C. v. Shearson–American Express,* 996 F.2d

493, 500 (1st Cir.1993). "An authentic document is a legalized document, which is publicly attested, which is legally valid by itself." *F.D.I.C. v. Shearson*, 996 F.2d at 500 *citing Ramos Mimoso*, 93 P.R.R. at 540. An example of an authentic document is one verified before notary public. *Id.*

■ Thus a pledge can be constituted orally, without complying with any formal requirements, sufficing that it be negotiated in good faith and that it complies with the general requirements set forth in Articles 1756 and 1762 of the Civil Code of Puerto Rico. *Ramos Mimoso*, 93 P.R.R. at 541. "The contract of pledge inter partes is validly constituted by the assent of the parties and the delivery of the thing to the creditor or to the third party chosen by common agreement. *Id.* at 541 *citing* 29 Scaevola, Codigo Civil 354–355, 356 (1955). However, in order for the pledge to be effective against third parties the date of the pledge must be evidenced by an authentic document. The purpose of this requirement of formality is to avoid transfers made in prejudice and fraud of creditors or third parties by simulating the existence of secured credits and thus misleading creditors into thinking that their rights over the debtor's entire patrimony is curtailed. *Id.* at 542, 543; *Liechty v. Descartes Sauri*, 9 Official Translations of the Opinions of the Supreme Court of Puerto Rico 660, 671 (1980).

■ In this case it is clear that the object pledged was not transferred to the creditor until after the Pledge Agreement was executed. The first deposit made in the time deposit account that was to hold the monies subject to the pledge took place two weeks after the Agreement was signed. The last deposit made in such time deposit account completing the amount pledged to the agreed amount of $500,000.00 was made on February 8, 1991, three months after the execution of the Pledge Agreement.

The date of the pledge, it being the date the transfer was made, has not been confirmed by any document, much less an authentic document. The Pledge Agreement was notarized but it was not executed on the day the pledge was made. The pledge was perfected on the day the transfer was made, subsequent to the execution of the Agreement. However, because there are no authentic documents evidencing the date of the pledge, such pledge cannot be effective against third parties. *In re Santos & Nieves, Inc.*, 814 F.2d 57 (1st Cir.1987); *Omega International Corp. v. Interstate Steel de Puerto Rico, Inc.*, 590 F.Supp. 844, 850 (D.P.R.1984).

■ The trustee in bankruptcy is a third party for purposes of Article 1764 since he was not a party to the agreement. *Santos & Nieves*, 814 F.2d at 61. Thus, a pledge agreement which does not meet the "authentic document rule" is ineffective against a trustee who pursuant to his powers under 11 U.S.C. § 544(a)(1) may seek to avoid the pledge. *Id.*

## B. *Set Off*

After having determined that the pledge constituted in this case between Eurobank and debtor is not enforceable against the trustee as a third party, and before we continue with the other issues raised by the trustee we must decide whether Eurobank has a right to offset the monies held in the time deposit account subject to the Pledge Agreement against the amount owed to it by debtor under the Loan Agreement.

Section 553 of the Bankruptcy Code reads as follows:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case, except to the extent that

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

11 U.S.C. § 553(a).

 It is well established that the general deposits subject to withdrawal at will create a debtor-creditor relationship between the bank and the depositor and not a trust where the bank must return when appropriate what was entrusted to it. A bank may setoff the monies deposited against the amount owed to it by the depositor if the deposit was a general one and the monies were withdrawable at will. Under those circumstances the requisite of mutuality for a right to set-off exists. The debts are in the same right and between the same parties standing in the same capacity. 4 Lawrence P. King, Collier on Bankruptcy ¶ 553.04[2] at p 553–22 (15th ed. 1993). If, however, the bank holds a special purpose deposit like a trust fund, its obligation is not one of a general debtor, but rather a trustee. The funds are not owed to the depositor but owned by it. *In re Bob Richards Chrysler–Plymouth Corp.*, 473 F.2d 262 (9th Cir.1973) *cert. denied* 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973); 4 Lawrence P. King et al, Collier on Bankruptcy ¶ 553.15[1] at 553–68 (15th Ed.1993).

> "In general, where the liability of the one claiming a setoff arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts does not exist, and such person may not set off a debt owing from the debtor against such liability. Thus, when a bank holds funds of the debtor in a special account, known by the bank to be dedicated to a special use, the bank cannot set off those funds against its claim against the debtor."

Collier on Bankruptcy, *supra* at 553–25, 553–26.

The Court of Appeals for the First Circuit in *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573 (1st Cir.1980) expressed that "[a] bank's right to set-off is limited to deposits made in good faith, in the ordinary course of business, and subject to withdrawal at will of the depositor ..." *Id.* at 579. In that case the Court of Appeals for the First Circuit held that a certificate of deposit is considered a "general deposit" for purposes of the Bank's right to set off, however, when the certificate of deposit has been pledged as security for a debt, the funds can no longer be withdrawn at the will of the depositor/debtor, and consequently the certificate of deposit ceases to be a general deposit for such purposes. *Id.*

 In the present case the monies held in the time deposit account which Eurobank intends to offset against its claim under the Loan Agreement were deposited pursuant to a Pledge Agreement as a security for such loan. The time deposit account in question did not even exist at the time of the execution of the Loan Agreement and the Pledge Agreement. Debtor made six deposits subsequent to the Pledge Agreement until the amount subject to the pledge, $500,000.00, was completed. The last deposit was made with a check which total amount added to the amount already deposited in the time deposit account, brought the balance of the account over the amount pledged. Debtor applied the amount in excess of $500,000.00 to reduce the principal of the loan evidencing its intention to deposit only the amount agreed would serve as security for the loan. The monies Eurobank holds in the time deposit account No. 01–08–000248 subject to the Pledge Agreement were deposited for the special purpose of securing the debt arising under the Loan Agreement.

It is important to note at this time that despite the fact that the pledge has been subsequently found to be unenforceable against third parties, the pledge is still valid between the parties subscribers of the Pledge Agreement, to wit, debtor and Eurobank. Thus, because the funds in the time deposit account were to be held in trust for debtor, even if they will not serve as security for a loan as initially intended,

for purposes of Eurobank, the funds are to be maintained in the same capacity as contracted for in the Pledge Agreement.

Therefore, pursuant to the above-stated the funds deposited in the time deposit account subject to the Pledge Agreement cannot be offset against the amount owed to Eurobank under the Loan Agreement.

Because this court has determined that the Pledge Agreement is not enforceable against the trustee and that defendant does not have a right to offset the amount owed to it by debtor against the monies kept in the time deposit account, we need not consider the issue of whether the deposits made in the time deposit account constitute fraudulent transfers to be avoided by the trustee.

## C. *Preference*

■■■ The Bankruptcy Code in its section 547 provides the trustee with the power to avoid certain transfers of interests of the debtor considered preferential if they were made:

(1) to or for the benefit of a creditor;

(2) to or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) That enables such creditor to receive more than such creditor would receive if

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In this case the trustee seeks to avoid the transfer of $78,605.18 made on February 8, 1991 to reduce the principal balance of the loan made to debtor. Eurobank has not presented any specific arguments in response to the trustee's allegations of a preferential transfer, other than its claim to the right of set off.

The first requirement of Section 547(b) is met because the transfer was for the benefit of creditors, Eurobank and Mr. Mora. The latter, being the guarantor of the loan made to debtor, holds a contingent unsecured claim against the estate. It is clear that the second requirement is also met, the antecedent debt being the one arising under the Loan Agreement subscribed by debtor and Eurobank on November 7, 1990.

In order to show debtor's insolvency at the time of the transfer the trustee refers to Joint Exhibit 19 of the Preliminary Pre–Trial Report (docket # 11) consisting on the financial statements of debtor for the year ending in June 30, 1990,[2] that is, approximately one year before the bankruptcy petition was filed, and seven months before the alleged preferential transfer took place. The balance sheet shows an excess of liabilities over assets illustrating debtor's insolvency.

As to the fourth requirement the transfer was made more than ninety (90) days prior to the filing of bankruptcy (the filing was on May 23, 1991 while the transfer was on February 8, 1991), and Eurobank, the creditor which directly benefitted from the transfer is not an insider. However, Mr. Mora, who as the guarantor of the debt owed to Eurobank also benefitted from the transfer is a classic insider. The trustee alleges that in this case, because the guarantor of the debt is an insider who benefitted from the transfer, the period of time to consider upon determining the existence of

---

**2.** The certified public accountants firm of Pannell Kerr Forster in its Independent Auditor's Report issued concerning debtor's financial statements for the year ending in June 30, 1990 expressed no opinion on the financial statements due to lack of sufficient information.

a preference is one year instead of the ninety (90) days.

To sustain his position the trustee cites the case of *Levit v. Ingersoll Rand Financial, Corp., (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1989) which held that the period to consider upon determining the preferential character of a transfer is one year if the payment benefitted insider creditors as well as non insiders. The Court of Appeals for the First Circuit considered the issue recently in the case of *In re Erin Food Services, Inc.*, 980 F.2d 792 (1st Cir.1992). The First Circuit discussed the rationale of the court in *Deprizio* and that of the courts rejecting that position, but did not decide whether to adopt or reject *Deprizio* as it reached its final determination based on other grounds. The Court of Appeals expressed the following:

"We need not revisit the underlying issue addressed in *Deprizio*. First, the difficulties hampering each attempt (including *Deprizio*) to unravel the riddle of ill-expressed (or unexpressed) congressional intent are well recorded. Second, a definitive congressional resolution to the riddle may be in the offing. *See* S.1985, 102d Cong., 2d Sess. (1992); *see also* 138 Cong. Rec. S.8241 ("[S]ection [204] seeks to overturn the Deprizio line of opinions ..."). Finally, and more importantly, the particular circumstances before us afford a more conspicuous basis for decision. **Therefore, for present purposes, we assume, without deciding, that *Deprizio* correctly interprets the legislative directives to be applied to the present claim.**"

*Id.* at 798–799 (emphasis added).

The Court of Appeals for the First Circuit established that in order to avoid a preferential transfer the trustee must prove by a preponderance of the evidence the five elements set forth in § 547(b). That is to say that for the court to apply the one year "reach-back" period applicable to insider creditors benefitting from the transfer, the trustee must show that the insider derived a "cognizable benefit" from the transfer (11 U.S.C. § 547(b)(1)) and that

the insider "received a greater benefit than would have been received in the event [the debtor] had been liquidated under chapter 7". (11 U.S.C. § 547(b)(5)) *Id.* at 799. The court stated the following:

[W]e believe section 547(b) plainly mandates that the "benefit" inquiry under section 547(b)(1) be confined, as in *Deprizio* and every other trilateral preference case.., to transfers of the debtor's property which are shown to have resulted in a quantifiable monetary reduction in the insider-creditor's contingent claim against the debtor's chapter 7 estate to the detriment of other creditors of the same class.

In fact, the Court of Appeals for the First Circuit rendered its decision in *Erin* based on the fact that the trustee did not prove that the transfers in question resulted in a cognizable benefit to the insider creditor and consequently it also failed to establish the requirement set forth in § 547(b)(5), namely that the creditor received more than it would have received in a Chapter 7 liquidation. *Id.* at 802.

For the time being, absent a clear rejection by the First Circuit of *Deprizio*, we must follow the plain language of the statute and await Congress' reaction to the doctrine established by such case. *See, Murphy v. Wainwright Bank & Trust Co. (In re Jameson Travel, Inc.)*, 147 B.R. 822 (Bankr.D.Mass.1992). If the five elements set forth in the statute are met, (of which only the last one is yet to be established) the trustee will succeed in his claim of a preferential transfer.

Regarding the fifth element, the trustee must show that the transfer made enabled the creditor to receive more than it would have received in a chapter 7 distribution. The court must first determine the creditor's class and what distribution that class would have received had the transfer not been made. 4 Lawrence P. King, et al., Collier on Bankruptcy, ¶ 547.08 at 547–41 (15th ed. 1993).

"Any payment to a general unsecured creditor within the ninety-day period preceding the filing of the petition would be preferential if other creditors in the same

class would not receive the same payment in a chapter 7 liquidation, i.e., the chapter 7 distribution plus the payment received."

*Id.* at 547–42. In tune with the above-stated, the court in *Elliott v. Frontier Properties/LP (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416 (9th Cir.1985) explained that:

[A]s long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.

*Id.*, at 1417.

According to the Monthly Operating Report of May 28, 1992 debtor's assets as of April 1992 amounted to $933,756.46 while the general unsecured creditors' claims filed up to that time total approximately $3,992,396.22. It is clear then that the expected distribution to general unsecured creditors will be less than one hundred percent. The trustee has shown that after the $78,605.18 transfer was made Mr. Mora, as a general unsecured creditor received more than he would have received in a Chapter 7 liquidation which translates into a "quantifiable monetary reduction" of his claim and thus a "cognizable benefit" to the detriment of other creditors.

For all the aforestated this court finds that the transfer of $78,605.18 made on February 8, 1991 to reduce the loan principal owed to Eurobank is a preferential transfer that may be audited by the trustee.

### Conclusion

In view of the foregoing the court hereby finds that:

1. The pledge agreement executed on November 7, 1990 between the parties in this case to secure the debt owed to Eurobank under the Loan Agreement is not effective against the trustee as a third party. The pledge may be avoided by the trustee pursuant to his powers under 11 U.S.C. § 544(a)(1).

2. Defendant does not have a right to set off the amount kept in the time deposit account No. 01–08–000248 against the amount owed to it by debtor under the Loan Agreement.

3. The payment of $78,605.18 made by debtor to defendant on February 8, 1991 to reduce the loan principal amount owed under the Loan Agreement was a preferential transfer and thus avoidable by the trustee under 11 U.S.C. § 547(b).

### Order

In accordance with this court's findings it is hereby ordered that the following property of the estate be turned over to the trustee pursuant to 11 U.S.C. § 542(a) and 11 U.S.C. 550(a):

1. The amount of $500,000.00 plus interest accrued to this date kept in the debtor's time deposit account No. 01–08–000248 at Eurobank.

2. The amount of $78,605.18 transferred by debtor to Eurobank to reduce the principal under the Loan Agreement and declared avoidable by the trustee as a preference.

The Clerk shall enter judgment accordingly.

SO ORDERED.