**In re BEN FRANKLIN RETAIL STORE, INC., et al., Debtors.**

**Bankruptcy Nos. 96 B 19482, 96 B 19483, 96 B 19489, 96 B 19494 and 96 B 19497.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Nov. 27, 1996.

**956**

Terrence J. Madden of Rooks, Pitts & Poust, Chicago, IL, for LaSalle National Bank.

Allan S. Brilliant of Holleb & Coff, Chicago, IL, for Debtor.

Steve Garcia of Hopkins & Sutter, for Unsecured Creditor's Committee.

Michael K. Desmond, Chicago, IL, for U.S. Trustee.

Edan Segal, New York City (New York Counsel).

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

This matter is before this Court on the Motion of LaSalle National Bank ("LaSalle") to modify the automatic stay to allow it to exercise its right of setoff against three accounts of the debtor, including a $1 million certificate of deposit account ("Motion"). On October, 16, 1996, by an oral ruling, this Court denied the Motion to the extent it requested relief from the stay to set off amounts due the Bank against the Certificate of Deposit. On November 4, 1996, LaSalle filed a motion requesting reconsideration of that oral ruling ("Motion to Reconsider"). In order to clarify the Court's ruling on the Motion, it will set forth the grounds for that decision and then address the Motion to Reconsider.

## BACKGROUND

The day before the bankruptcy petition was filed, LaSalle honored the Debtors' payroll checks and debited the general account for $410,234.92. Based upon instructions received from the Debtors, it tried to reverse the automatic clearing house ("ACH") debit. The day the petition was filed, believing that the ACH debit would be reversed and that there would then be in excess of $400,000 in the Debtors' general account, LaSalle made two wire transfers to the Debtors' professionals totaling $395,000. As it turned out, the ACH transfer could not be reversed and, as of the petition date, there was a negative balance of $410,234.92 in the payroll account. By these motions LaSalle requests relief from the automatic stay to set off that liability against the following assets remaining with the bank:

- A Refinancing Account with a balance of about $10,000;

- The balance left in the general account of about $45,000;

- A $1 million certificate of deposit account ("CD") pledged to the bank to secure letters of credit.

## DISCUSSION

### Objections to Motion

■ Section 553[1] authorizes the set off of "mutual" debts. The requirement of mutuality means that the debts must have arisen in the same right and between the same parties. Both the Debtors and the Creditors' Committee argued in response to the Motion, that where an account is established for a "special purpose" there is no mutuality and therefore no right of set off. The pledge of the CD expressly provided that it was to secure performance of the Stores' obligations under a L/C Connection Agreement ("L/C Agreement").[2] The Debtors also argued that under Illinois law a bank does not have set off rights in an account if the bank knows that a third party has an interest in such funds. Finally, the Debtors noted that set off is an equitable remedy, discretionary with the court. The Debtors asked the court to deny the relief because LaSalle has failed to honor all letters of credit that it issued, allegedly because of technical defects.

### Court's Ruling on Motion

■ A bank is allowed to set off funds deposited in a debtor's general account against amounts owed to it by the depositor. 11 U.S.C. § 553; *In re Almacenes Gigante, Inc.,* 159 B.R. 638 (Bankr.D. Puerto Rico 1993). However, when a fund is deposited for a "special purpose" it is held in trust for the depositor, rather than "owed" to the depositor. Because of this distinction, the requisite mutuality of obligation is not present with special purpose funds and set off is not permitted. *Id.* at 643; *United States v. Butterworth–Judson Corp.,* 267 U.S. 387, 45 S.Ct. 338, 69 L.Ed. 672 (1925); 4 *Collier on Bankruptcy* ¶ 553.15[1] at 553–67–68 (15th ed. 1995):

[A] general deposit in a bank, subject to withdrawal at will, creates a debtor-creditor relationship between the bank and the depositor, and not a privilege or a right of a fiduciary character. Hence, with respect to deposits made prior to 90 days before the depositor's bankruptcy, a bank has an obligation that it may set off against any debt owed to it by the debtor, subject, of course, to the requirements of "mutuality," previously discussed. But when the deposit is not one of a general character but, rather, a deposit for a special purpose (as, for example, to be paid to creditors or designated persons), the money is held as a trust fund and not as bank assets. Thus, the bank is without right to appropriate the deposit to its own use as a setoff.

LaSalle seeks to set off the $1 million CD. The CD was pledged by the Debtors to se-

---

1. All statutory references are to the bankruptcy code, 11 U.S.C. § 101, *et seq.,* unless otherwise indicated.

2. The "Recitals" to the Pledge Agreement provided that the pledge was to "secure payment and performance of Stores' obligations and liabilities under the [L/C] Connection Agreement."

cure its obligations under a letter of credit agreement. The CD is thus a "special purpose" fund and set off against that fund is not allowed.

Apparently recognizing the deficiency in their set off argument, LaSalle argued in its reply in support of the Motion, that it should be able to set off the balance of the CD in excess of the outstanding letters of credit. The CD is valued at $1 million, while the outstanding letters of credit total approximately $779,000. LaSalle based this argument on the Supreme Court's statement in *Butterworth–Judson* that "a bank having notice that a deposit is held by one for the use of or as security for another has only such right of set-off as is not inconsistent with the rights of the latter." *Id.* at 395, 45 S.Ct. at 340. LaSalle argued that this statement indicates that the special purpose rule should only apply to the extent funds are set aside for the special purpose. However, this Court found no cases applying the special purpose rule in this fashion. Moreover, the theory behind the rule prohibiting set off of special purpose funds is that the "fund" itself is said to be in the nature of a "trust fund" and the "fund," because it has been designated for a special purpose, is "owned" by the depositor, rather than owed to it. *Almacenes Gigante,* 159 B.R. at 643. When the funds are owned by the depositor, rather than owed to it, there is no debtor-creditor relationship and no mutuality of obligation giving rise to a right of set off. Furthermore, Illinois courts have stated that the law relating to the deposit of special funds requires the bank to "return[ ] the identical thing or money deposited." *Filosa v. Pecora,* 44 Ill.App.3d 912, 917, 3 Ill.Dec. 528, 358 N.E.2d 1213 (1st Dist.1976).

Therefore, this Court concluded that the CD was a special purpose account. As such LaSalle has no interest in it, but merely holds it in trust for the Debtors, and there is no right of set off of any amount.

**Motion for Reconsideration**

In its Motion for Reconsideration LaSalle argues that the CD [3] was not a special purpose fund, and, alternately, that even if it were a special purpose fund the agreements permitted setoff of the CD. As LaSalle sees it, a special purpose fund is only created when 1) the account is established for a particular purpose; 2) the bank was required to return the identical thing deposited upon conclusion of the special purpose; and 3) the funds were held for the benefit of a third party. LaSalle concedes that the first requirement is met here, but contends that the latter two "requirements" have not been met.

LaSalle relies on *Mid–City National Bank of Chicago v. Mar Building Corp.,* 33 Ill. App.3d 1083, 339 N.E.2d 497 (1st Dist.1975) in support of its argument that a special account is only created if the bank is required to return "the identical thing deposited." LaSalle argues that it was not required to return the deposited funds, intact, so a special purpose fund was not created.[4]

■ Paragraph 8 of the L/C Agreement governed return of the "Collateral" and provided that thirty days following expiration of a letter of credit the Debtor could direct LaSalle to release Collateral equal to the amount of the credit expiring, provided there were no other defaults. LaSalle argues that because the Debtors were in default under the L/C Agreement and the Pledge Agreement, they were never entitled to return of

---

**3.** For the first time LaSalle explained that the CD was never issued that instead a book entry of the deposit was made for a "negotiable certificate of deposit." Because the account was still segregated and pledged for a specific purpose, the Court does not find this difference material. For simplicity, it will continue to refer to the "certificate account" as the "CD."

**4.** This argument is based, in part, on the fact that a certificate of deposit was never issued, but instead the funds were held in a certificate ac-

count. This Court does not find that difference controlling. Some cases do state that "a special purpose fund" requires the return of the "identical thing deposited." Money, however, is fungible. Where, as here, the money was held in a segregated, special purpose, account, rather than a CD, it constituted the Collateral contemplated by the Pledge Agreement and the money in the certificate account was not available for general use.

the Collateral and therefore there was no special purpose account.[5] While the agreements gave LaSalle the right to take possession and control of the Collateral upon default, that right does not change the nature of the account from a special purpose fund to a general account. The existence of a default does not change the fact that the CD was placed in LaSalle's possession for a specific purpose.

Next LaSalle argues that the special purpose rule only applies when the funds are held for the benefit of a third party. In this case the CD was pledged for LaSalle's benefit, not a third party. LaSalle cites no law in support of that argument, but there are cases denying setoff in precisely this situation. *In re Almacenes Gigante, Inc.*, 159 B.R. 638 (Bankr.D.Puerto Rico 1993); *In re Airwest Internat'l*, 70 B.R. 914 (D.Haw.1987); *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573 (1st Cir.1980). This argument would also be inconsistent with a leading treatise on Banks and Banking. *See Michie on Banks and Banking*, Volume 5A, § 129 (1994) "A bank cannot hold special deposits, or moneys deposited, or securities pledged as collateral to secure a special demand, for other demands though against the same debtor."

■ This Court sees no reason why the special purpose rule should only apply where the account is held for the benefit of a third party. In both situations the account is not subject to withdrawal at will by the depositor, nor, under the theory of the special purpose rule, are the funds "owed" to the depositor, but they are held in trust by the bank. Thus the same reason for denying setoff exists under both circumstances: there is no mutuality of obligation.

■ Moreover, even if there were room in these facts to find differently, because set off

is against the general policy of equal distribution to creditors, the mutuality requirement is narrowly construed and only allowed "where equitable considerations are strongest." *In re Pyramid Industries, Inc.*, 170 B.R. 974, 983 (Bankr.N.D.Ill.1994). A creditor who is allowed to offset debts "is receiving full repayment and is therefore in a better position than other creditors who will receive less than the full value of their claims because they are not entitled to setoff. (Citations omitted). Put differently, the creditor who gets paid in full via setoff receives a 'preference' at the expense of other creditors." *Pyramid Industries*, at 983.

■ There is no question that LaSalle believes it was wronged by the Debtors when it wire transferred money to the Debtors' professionals. Maybe it was, but LaSalle is in no different position than any other creditor who was induced to extend credit or part with value just before a bankruptcy petition was filed. Bankruptcy is intended to put creditors on an equal playing field. For that reason, any remedy, such as set off, that favors one creditor over another should be narrowly applied. Accordingly, this Court again concludes that LaSalle has no right to set off the CD under § 553.

**Contractual Right of Set off**

■ Next LaSalle argues that even if the CD is a special purpose fund, it has a contractual right to off set debts against any accounts of the Debtors regardless of mutuality. The set off right LaSalle relies on in support of this argument is set forth in a Wire Transfer Services Agreement (the "Wire Agreement"). The Wire Agreement, which was executed before the Pledge and L/C Agreements, provides:

[t]he BANK is hereby authorized to immediately charge any other account of the

---

**5.** The default LaSalle relies on is the filing of the bankruptcy petition. LaSalle argues that this *ipso facto* clause in the Pledge Agreement is enforceable because the Pledge Agreement is not an executory contract and therefore § 365(e) does not apply. *See In re F.B.F. Industries, Inc.*,

165 B.R. 544, 549 (Bankr.E.D.Pa.1994). Even if that is so, the *ipso facto* provision is rendered unenforceable by §§ 363(*l*) and 541(c). *In re Taylor*, 146 B.R. 41 (M.D.Ga.1992), *rev'd on other grounds*, 3 F.3d 1512 (11th Cir.1993).

CUSTOMER of the BANK to the extent of any amount due hereunder without notice to the CUSTOMER.

LaSalle argues that the Pledge Agreement expressly recognizes the bank's right to exercise this right of setoff. LaSalle relies on the following language from the Pledge Agreement as "express authorization" to set off overdrafts from the general account against the CD:

2(b) Pledgee's **rights** to the security granted hereunder is now and shall be perfected and have first priority, subject to no other lien, claim or other right of any other party, except for the lien in favor of Foothill Capital Corporation, which lien is junior to the lien created hereby in favor of Pledgee. (Emphasis added).

The Wire Agreement may authorize set offs against unrestricted accounts, but not special purpose accounts, or funds, that had not even been created at the time it was executed. The CD was pledged to LaSalle only to "secure payment and performance of Stores' obligations and liabilities under the [L/C] Connection Agreement," (defined as the "Obligations" by the Pledge Agreement), not as an "account" within the meaning of the Wire Agreement. Nor can LaSalle succeed in finding any express or implied agreement that the Wire Agreement was made a part of the Pledge Agreement. There is nothing in the use of the word "rights" in ¶ 2(b) above, that indicates any reference to the "rights" of setoff under the Wire Agreement. To the contrary the "rights" referred to in ¶ 2(b) are the "rights to the security granted hereunder"—which is the CD. The rights granted to the Collateral are limited to those rights set forth in Pledge Agreement and not rights granted in other agreements.

LaSalle's attempt to incorporate the Wire Agreement into ¶ 7 of the Pledge Agreement is equally unavailing. Paragraph 7 of the Pledge Agreement defines defaults as including the filing of bankruptcy, insolvency and an event of default under the Term Loan and Security Agreement dated December 21, 1993. Paragraph 7 does not mention the Wire Agreement. But LaSalle concludes that because the Pledge Agreement refers to defaults under the Term Loan and Security Agreement that the word "rights" must be broadly read to include other agreements between the parties, including rights of setoff under the Wire Agreement.

There is nothing in the Pledge Agreement which remotely suggests that the Debtors intended to incorporate the general right of setoff of the Wire Agreement into the Pledge Agreement.[6] In fact LaSalle's position is contrary to the maxim *expressio unius est exclusio alterius. See Black's Law Dictionary,* 521 (5th ed. 1979) ("When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred.") If the parties had wanted to make the CD subject to LaSalle's rights under the Wire Agreement they could have said so. They did not.

Finally LaSalle argues that the right of set off is established by paragraph 7(b) which defines LaSalle's rights upon default. Paragraph 7(b) permits the bank to 1) take possession and control of the Collateral, and 2) transfer the Collateral into the bank's name. The provisions defining what action LaSalle is authorized to take upon default must be limited to the purposes of the pledge.[7] The CD was pledged to secure performance of defined "Obligations." The Obligations were limited to obligations and liabilities arising under the L/C Agreement.

As LaSalle itself acknowledges, the bank-customer relationship is defined by their

---

6. This Court also finds that there in no ambiguity in the Pledge Agreement and therefore extrinsic evidence is inadmissible to show a contrary intent. *AM International, Inc. v. Graphic Mgmt. Assoc., Inc.,* 44 F.3d 572 (7th Cir.1995).

7. This is made express in paragraph 7(b)(iii), which authorizes the bank to reduce the Collateral to cash, and paragraph 7(d), which provides that the cash will be applied to reduce the defined Obligations. No authority is granted to use the cash for any other purpose.

agreements. Here the parties' agreements limit LaSalle's right to the CD to those directly related to securing performance of the Obligations, that is, the obligations arising under the L/C Agreement, not the Wire Agreement. There is no agreement—express or implied—giving it greater rights.

**Effect of a Third Party's Interest in the Funds**

Paragraph 2(b) of the Pledge Agreement acknowledges that, except for the lien created therein, LaSalle's rights are subject to the lien of Foothill Capital Corporation. The Debtors argue that LaSalle has no right to set off the amounts remaining in its other accounts because LaSalle was aware that the operating accounts contained proceeds from the sale of the Debtors' inventory and collection of accounts receivable, and were subject to Foothill's blanket security interest.

This really is not an issue about the LaSalle's knowledge of Foothill's security interest, which relates to the "special purpose" rule, but of the priority between a secured party with a perfected interest in proceeds and a bank's right of set off. Illinois law has settled that dispute. Under § 9–306(4)(d)(i) of the Illinois Uniform Commercial Code, where the debtor is in bankruptcy, the bank's right of set off has priority of the security interest in "cash and deposit accounts of the debtor in which proceeds have been commingled with other funds." 810 ILCS 5/9–306(4)(d)(i).

**Equitable Right to Set off Remaining Accounts**

Since this Court has determined that any right of set off LaSalle may have is based upon the common law and not a contract, equitable considerations are relevant. Furthermore, the Court finds that there are factual issues concerning whether LaSalle acted inequitably in denying draws on letters of credit and a hearing will be held to determine those issues.