Miguel **VILLAFAÑE NERIS,** Insurance **Commissioner of Puerto Rico, in his capacity as Administrator–Liquidator of Guaranty Insurance Co., Plaintiff,**

v.

**CITIBANK, N.A., Defendant,**

**Federal Deposit Insurance Corporation, Intervenor.**

**Civ. No. 92–2295 (JAF).**

United States District Court, D. Puerto Rico.

Feb. 9, 1994.

---

Carlos J. Morales–Bauzá, Rosello–Rentas & Rabell–Mendez, San Juan, PR, for plaintiff.

Rosa María Cruz–Niemec, McConnell Valdes, San Juan, PR, for defendant.

Jorge E. Vélez, Gonzalez & Bennazar, San Juan, PR, for Intervenor FDIC.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action brought by the Insurance Commissioner of Puerto Rico ("Commissioner)", in his capacity as Administrator–Liquidator of Guaranty Insurance Company ("Guaranty"), against Citibank, N.A. ("Citibank"), for the payment of a Certificate of Deposit ("CD") originally purchased by Guaranty from Girod Trust. The Federal Deposit Insurance Corporation ("FDIC"), which was appointed as receiver of Girod

Trust and was responsible for transferring the CD to Citibank, intervened in the suit. The matter is now before this court on a motion for summary judgment filed by the FDIC, and a joint motion by Citibank and the FDIC for the dismissal of Citibank. We grant both motions.

## I.

### Facts

Around August 3, 1983, Guaranty purchased from Girod Trust a Certificate of Deposit for the amount of $140,000. It had an original maturity date of February 27, 1984, and was renewed until August 25, 1984. In October of 1983, Girod extended a loan to Guaranty in the amount of $600,000. On August 16, 1984, Girod Trust was found insolvent by the Secretary of the Treasury, and the FDIC was appointed as receiver. During August of 1984, the CD, among other Girod Trust deposits and liabilities, was transferred by the FDIC in its capacity as receiver, to Citibank, pursuant to a Purchase and Assumption Agreement. The outstanding loan, which still had a balance of $350,000, was sold by the FDIC as receiver, to the FDIC in its corporate capacity. On September 4, 1984, after a request by the FDIC, Citibank transferred the amount of the CD back to the FDIC, which then applied the money to the remainder of the loan. In December of 1984, Guaranty was liquidated and the Commissioner became the Administrator–Liquidator. The Commissioner filed a complaint against Citibank in the Superior Court of Puerto Rico on July 3, 1991, demanding payment of the amount of the CD. The FDIC intervened in the suit on September 1, 1992, and later filed a motion to remove the case to this court.

## II.

### Discussion

The motion to dismiss and the motion for summary judgment cause us to examine two issues: (1) whether Citibank is liable to the Commissioner for the amount of the CD; and (2) whether the FDIC acted correctly in applying the amount of the CD to the outstanding loan. We will address these in turn.

### A. Standards for Motion to Dismiss and Summary Judgment

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993).

A court shall enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. Liability of Citibank

The Commissioner originally brought suit against Citibank alone, alleging that Citibank failed to follow proper procedures when it paid the amount of the CD to the FDIC without any authorization by Guaranty. Citibank and the FDIC argue that pursuant to the agreement by which Citibank assumed the CD, the FDIC agreed to indemnify Citibank in the event that a judicial claim was brought regarding any of the liabilities assumed by Citibank, and that, therefore, Citibank should be dismissed. In response, the Commissioner argues that it should not be prejudiced by an indemnity agreement between the two defendants.

A Purchase and Assumption ("P & A") Agreement such as that between Citibank and the FDIC is the preferred manner by which the FDIC handles the failure of a bank. *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Such agreements involve the assuming bank, and the FDIC in both its capacity as receiver and as corporate insurer. In a typical P & A Agreement, the assuming bank purchases the assets and assumes the liabilities of the failed

bank. Those assets which are not of high quality are sold to the FDIC in its corporate capacity, which attempts to collect on the returned assets. In order to accomplish the purchase of the failed bank by the assuming bank with as little disruption as possible, P & A Agreements are carried out with great speed, usually overnight. *Id.*

In this case, the loan which Girod Trust had extended to Guaranty was sold to the FDIC in its corporate capacity, while the CD was accidentally transferred to Citibank. At issue then is whether a depositor can claim payment for a deposit from an assuming bank when the receiver of the failed bank inadvertently transferred the deposit to the assuming bank and then requested its return.

Citibank, as the assuming bank, took on some of the assets and liabilities of Girod Trust, including the CD, pursuant to the P & A Agreement. To determine the possible liability of Citibank, we must look to that agreement. *See Lawson v. FDIC,* 3 F.3d 11, 16 (1st Cir.1993). The Agreement contained a clause providing:

> If it is determined that all or any portion of the deposit liabilities assumed by the Assuming Bank constitutes a deposit frozen by the Receiver to provide for the payment of any liability of any depositor to the [Failed] Bank or the Receiver ..., the Assuming Bank shall pay to the [FDIC], upon its demand, [sic] or any portion of such funds then on deposit and the Assuming Bank shall be discharged from further liability to such depositor and shall be indemnify [sic] and held harmless by the [FDIC] to the extent of the payment so made to the [FDIC].

■ Under Puerto Rico law,[1] contracts will be enforced to give effect to their intentions. 31 L.P.R.A. § 3471. The clear language of the agreement establishes that the FDIC and Citibank anticipated the possibility that some liabilities which could be applied to the assets sold to the FDIC in its corporate capacity might be inadvertently transferred to Citibank.[2] The inclusion of the clause was clearly meant to protect against the exact type of situation which occurred here. The parties explicitly provided that Citibank would not take on any obligation for deposits which were to be applied to outstanding debts of the depositor with the failed bank.

■ In the context of a P & A Agreement, the FDIC and the assuming bank can limit the liabilities which are taken on by the assuming bank. In *Lawson,* the court found that where certificates of deposit of a failed bank were transferred to an assuming bank, the assuming bank was only liable to the depositors for the interest rate which was agreed upon in the P & A agreement, and not for the rate at which the depositors had originally contracted with the failed bank. *See also Payne v. Security Sav. & Loan Ass'n,* 924 F.2d 109, 111–12 (7th Cir.1991). Similarly, here Citibank is only accountable for those liabilities assumed pursuant to the P & A agreement, which explicitly excluded responsibility for any deposit returned at the request of Citibank. The motion to dismiss Citibank is granted.

### C. Setoff by the FDIC

■ Next, we will consider whether the FDIC acted properly in applying the proceeds of the CD to the outstanding loan. The FDIC has the right to freeze insured deposits where the depositor also owes a debt to the failed bank. 12 U.S.C.

---

1. Parties to a contract may control the choice of law to be applied by including an express provision as to which law will govern. *See Federal Deposit Ins. Corp. v. Rusconi,* 808 F.Supp. 30, 36 n. 11 (D.Me.1992) (listing various authorities). Because we do not have the entire Purchase and Assumption Agreement before us, we do not know whether it included a choice of law provision. However, the outcome is the same under either federal or Puerto Rico law. *See Lawson v. Fleet Bank,* 807 F.Supp. 136, 141 (D.Me.1992),

*aff'd, sub nom Lawson v. FDIC,* 3 F.3d 11 (1st Cir.1993).

2. We note that P & A Agreements are carried out with great speed, usually overnight. *Gunter,* 674 F.2d at 865. While we were not apprised of the exact timetable of the P & A agreement here, the usual context of such transactions lends credence to the FDIC's claim that the CD was inadvertently transferred to Citibank.

§ 1822(d).[3] This statute has been found to create a federal statutory right to setoff. *See Abrams v. FDIC*, 944 F.2d 307 (6th Cir.1991); *Northern Trust Co. v. FDIC.* 619 F.Supp. 1340, 1342 (W.D.Okla.1985).

Therefore, if there is no genuine issue of material fact as to whether Guaranty had an outstanding liability at Girod Trust, and the amount of the liability equalled or exceeded the amount of the CD, summary judgment for the FDIC is in order. *See Abrams*, 944 F.2d at 311. The Commissioner has admitted that in August of 1984 Guaranty had an outstanding debt remaining from the $600,000 loan. The uncontested amount remaining on the loan at that time was $350,000 and the amount of the disputed CD was $160,000. Therefore, we find that the FDIC acted correctly in applying the proceeds from the CD to the loan.

The equities in this case also favor setoff. "Setoff will not be permitted when it would be inequitable or contrary to public policy to do so." *Federal Deposit Ins. Corp. v. Bank of America*, 701 F.2d 831, 836 (9th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *see also Northern Trust*, 619 F.Supp. at 1342. Under Puerto Rico law, a setoff can take place when two persons, in their own right, are mutually creditors and debtors of each other. 31 L.P.R.A. § 3221. There are three types of setoffs: Legal, judicial and voluntary. *Walla Corp. v. Banco Com. de Mayaguez*, 114 D.P.R. 216 (1983). A voluntary setoff may arise from a covenant between the parties. In this case, the agreement between Guaranty and Girod Trust contained such a voluntary setoff. The Terms and Conditions of the CD state: "[t]he bank has the right to compensate any liability due to the bank by their depositor against any of its deposits in the bank." This term created a contractual agreement for the setoff of any debts owed by Guaranty to Girod Trust by the amount of the CD. ·Additional proof of a voluntary

setoff exists in the form of a letter signed by Alberto R. Vela, the Vice President of Guaranty, which authorized the cancellation of the CD and the credit of the proceeds to the debt owed by Guaranty to Girod Trust. Because there is uncontested evidence that Guaranty anticipated and agreed that the proceeds of the CD would be applied to the loan, we do not think that allowing the setoff is an inequitable result.

### III.

#### *Conclusion*

Citibank is not liable for the amount of the CD, which it returned to the FDIC as required by the Purchase and Assumption Agreement. The FDIC acted equitably, and pursuant to its statutory powers, in applying the proceeds of the CD to Guaranty's outstanding loan obligation. Therefore, the motion for summary judgment and the motion to dismiss are **granted**. Judgment shall be entered dismissing the complaint.

**IT IS SO ORDERED.**

---

**3.** 12 U.S.C. § 1822(d) provides:
The Corporation may withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the deposi-

tory institution in default or its receiver, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefor.