Hoffman, U.S. Bankruptcy Appellate Panel Judge.
*137 Noreen Wiscovitch-Rentas, chapter 7 trustee (the "Trustee"), appeals from that portion of the bankruptcy court's August 2, 2018 order (the "Order") denying her motion for summary judgment on count I of her complaint and granting the cross-motion of Banco Popular de Puerto Rico ("BPPR" or "the bank"). In count I, the Trustee asserted a claim for relief under Bankruptcy Code §§ 542 and 553,[1] seeking to recover from BPPR the sum of $ 31,434.17-the amount the bank withdrew, pre-bankruptcy, from the savings account of the debtor, Juan Enrique Cruz Rivera (the "Debtor").
The Trustee asserted that BPPR was not entitled to the seized funds because it failed to perfect a security interest in the savings account in accordance with the requirements of the Puerto Rico Civil Code, and because the funds were not freely available for withdrawal by the Debtor-a prerequisite to a bank's ability to exercise a right of setoff. Needless to say, BPPR disagreed with both the Trustee's assertions. The bankruptcy court ruled that BPPR enjoyed a perfected security interest in the savings account. As a result, the court did not address the Trustee's alternative claim as to the unavailability of BPPR's setoff rights.
The bankruptcy court also granted summary judgment in favor of BPPR on count II of the complaint, in which the Trustee asserted a preference claim under § 547. As the Trustee neither identified that issue in her statement of issues nor briefed it, she has waived the issue for appeal purposes. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (stating an appellant's failure to brief an issue waives it); City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 91 (1st Cir. 2011) (stating an issue omitted from the statement of issues is waived).
Accordingly, we AFFIRM the Order as to count II, and, for the reasons discussed below, we VACATE the Order as to count I and REMAND to the bankruptcy court for further proceedings consistent with this opinion.
BACKGROUND [2]
I. Pre-bankruptcy Events
On October 19, 2012, BPPR loaned the Debtor $ 31,434.17. In a loan agreement memorializing this transaction, the Debtor agreed to make 83 monthly payments of $ 78.59 each, beginning on November 19, 2012, and a final lump sum payment of $ 31,512.76 on October 19, 2019. The Debtor authorized BPPR to debit the payments from his BPPR savings account ending in 6280. On the same date, the Debtor also *138 signed a pledge agreement, whereby he secured his obligations under the loan agreement with his BPPR savings account ending in 1438 (the "1438 account"). The pledge agreement was not notarized.
The Debtor defaulted in his monthly payment obligation to BPPR for the months of February and March 2015. Consequently, on April 30, 2015, BPPR debited the 1438 account in the amount of $ 31,434.17, thereby paying off the outstanding balance of the loan.
II. Bankruptcy Court Proceedings
Less than a week later, on May 5, 2015, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. On his schedules accompanying the petition, the Debtor listed approximately $ 77,000.00 in assets, and $ 185,000.00 in liabilities.
A. The Complaint
On April 6, 2017, the Trustee commenced an adversary proceeding against BPPR. In count I of her complaint, the Trustee alleged that BPPR's debiting the 1438 account was an improper setoff because the 1438 account had been pledged to BPPR as collateral for the loan to the Debtor and was unavailable to the Debtor, making it "a special purpose deposit" not subject to setoff under the Puerto Rico Civil Code.[3] In her prayer for relief, the Trustee requested an order pursuant to § 542 directing BPPR to turn over to her the offset amount of $ 31,434.17.
B. BPPR's Answer and the Cross-Motions for Summary Judgment
BPPR answered the complaint, asserting several affirmative defenses, including that: (1) its claim was fully secured; (2) the complaint "was barred by the doctrine of setoff and/or recoupment"; and (3) the pledge agreement complied with the provisions of the Puerto Rico Civil Code.
The Trustee then followed with a motion for summary judgment accompanied by a supporting statement of uncontested facts.[4] She reiterated that the funds in the 1438 account were not subject to setoff because they "were frozen" and "[un]available for use or for withdrawal at will." This, the Trustee claimed, made the 1438 account a special purpose account, rather than a general purpose account. She elaborated: "If [ ] the bank holds a special purpose deposit like a trust fund, its obligation is not one of a general debtor, but rather a trustee. The funds are not owed to the depositor but owned by it[.]" Under such circumstances, the Trustee argued, the required mutuality for a right to setoff was absent. To support this claim, the Trustee relied upon Constructora Maza, Inc. v. Banco de Ponce, 616 F.2d 573, 579 (1st Cir. 1980) (stating a "bank's right to set-off is limited to deposits made in good faith, in the ordinary course of business, and subject to withdrawal at the will of the depositor"). The Trustee also raised a new claim. Asserting her strong arm powers under § 544(a)(1), the Trustee sought to "avoid" the pledge agreement,[5] because it was not notarized and thus failed to satisfy the authentication requirement of P.R. Laws Ann. tit. 31, § 5023, making it unenforceable *139 against third parties.[6] In support of the asserted notarization requirement, the Trustee cited, among other authorities, Fuste v. Eurobank & Tr. Co. (In re Almacenes Gigante, Inc.), 159 B.R. 638 (Bankr. D.P.R. 1993).
BPPR countered with a cross-motion for summary judgment, asking the court to grant summary judgment in its favor, declare its claim secured, and deny the Trustee's summary judgment motion.[7] BPPR included within the cross-motion a list of uncontested material facts, which essentially paralleled the Trustee's. Significantly, BPPR acknowledged that it had "placed a hold on [the 1438 account] for a total amount of $ 31,434.17 as [a] guarantee for the personal loan."
BPPR maintained that the pledge agreement satisfied the requirements for a valid pledge prescribed in Article 1756 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5001. Additionally, BPPR pointed to P.R. Laws Ann. tit. 31, § 5021, entitled "Requisites of [P]ledge," which provides: "Besides the requisites mentioned in § 5001 of this title, it is necessary, in order to constitute the contract of pledge, that the pledge should be placed in possession of the creditor or of a third party by common consent." P.R. Laws Ann. tit. 31, § 5021. BPPR claimed that the "Debtor gave his consent by signing the loan note and pledge agreement for BPPR to hold the amount of $ 31,434.17 as a guarantee for the approved personal loan." BPPR argued that the Debtor "could continue using [the 1438 account] by depositing and withdrawing monies in excess of the guaranteed amount."
BPPR also challenged the Trustee's authentication argument, asserting that the Supreme Court of Puerto Rico held in Ramos Mimoso v. Tribunal Superior de P.R., 93 D.P.R. 551 (1966), that a pledge can be oral, without any formality, provided it satisfied the requirements of Articles 1756 and 1762 of the Civil Code of Puerto Rico.[8]
Then, contrary to its prior argument, BPPR asserted in its cross-motion that the Commercial Transactions Act of Puerto Rico (also known as the Puerto Rico Uniform Commercial Code and hereinafter sometimes the "PR UCC")-and not Article 1756 of the Civil Code of Puerto Rico-governed the underlying transaction. BPPR attempted to reconcile the inherent inconsistency in its position by explaining that it looked to the Puerto Rico Civil Code merely to supply the definition of a pledge and then turned to the PR UCC to establish that it had a perfected security interest in the 1438 account, stating:
Section 2264 of the [PR UCC] establishes that a security interest in a deposit *140 account is perfected by control of the collateral. Section 2214(a)(1) establishes that a secured party has control of a deposit account if the secured party is the bank with which the deposit account is maintained.
BPPR claimed that it had perfected its security interest in the 1438 account under the PR UCC by maintaining control over the account.
In addition, BPPR defended its right of setoff with a three-pronged argument: (1) "Section 2367 [of the PR UCC] establishes that ... after default, if a secured party holds a security interest in a deposit account perfected by control, [it] may apply the balance of the deposit account to the obligation secured by the deposit account"; (2) "Section 2290 [of the PR UCC] establishes a right of [setoff] of a secured party as to a deposit account maintained with the secured party";[9] and (3) § 553 of the Bankruptcy Code"protects BPPR's right to set[ ]off the amounts due."
C. The Order
After the bankruptcy court received the motion for summary judgment and cross-motion, it entered an order directing the parties "to file opposing [statements of] material facts" pursuant to Rule 56(c) of the Local Civil Rules for the U.S. District Court for the District of Puerto Rico. In response, the Trustee and BPPR filed a "joint motion in compliance," representing that the cross-motions did "not require opposing statements since there [were] no material facts in controversy and the remaining unresolved dispute [was] primarily legal." Thereafter, the bankruptcy court, relying on the "stipulated [ ] salient" facts set forth in the parties' respective statements of uncontested material facts, and without a hearing, entered the Order that is the subject of this appeal. Wiscovitch v. Banco Popular de P.R. (In re Cruz Rivera), Adv. Pro. No. 17-00093 (MCF), 2018 WL 3702481, at *1 (Bankr. D.P.R. Aug. 2, 2018).
In the Order, the bankruptcy court acknowledged that "the parties filed a motion to indicate that all facts as alleged in their summary judgment motions [were] uncontested."[10] Id. at *1 n.4. The court then ruled that BPPR "had a valid and enforceable lien on the Debtor's savings *141 account" which was not subject to avoidance under § 544(a) and, therefore, it was unnecessary to address the Trustee's request for turnover. Id. at *6. The bankruptcy court reasoned:
Deposit accounts fall within the scope of personal property regulated by Puerto Rico's Commercial Transactions Act, P.R. Laws Ann. tit. 19, § 2219(a). Section 9-109 of the Commercial Transactions Act specifically states that the Civil Code of Puerto Rico shall not apply with regard to security interests in personal property covered by the Commercial Transactions Act. P.R. Laws Ann. tit. 19, § 2219(e). The Debtor's savings account is within the Commercial Transactions Act's definition of a "deposit account." The Commercial Transactions Act defines a deposit account as "... a demand, time, savings, passbook, or similar account maintained with a bank." P.R. Laws Ann. tit. 19, § 2212(29). Therefore, the applicable law for the creation and perfection of security interests in deposit accounts is the Commercial Transactions Act of Puerto Rico and not the Civil Code.
A security interest in a deposit account may be perfected by control, under Sections 9-104 and 9-314(a) of the Commercial Transactions Act. P.R. Laws Ann. tit. 19, § 2214(a); P.R. Laws Ann. tit. 19, § 2264. Section 9-314(a) expressly states that "a security interest in ... deposit accounts may be perfected by ... control under Section 9-104. P.R. Laws Ann. tit. 19, § 2264. Section 9-104(a)(1) provides the requirements for control of the collateral; "A secured party has control of a deposit account if ... (1) the secured party is the bank with which the deposit account is maintained ...[.]" P.R. Laws Ann. tit. 19, § 2214(a).
Id. at *4 (footnotes omitted).
The bankruptcy court rejected the Trustee's reliance on In re Almacenes Gigante, Inc., supra, and her assertion that BPPR's security interest in the 1438 account was unperfected due to the pledge agreement's lacking authentication, stating:
The Trustee's argument omits more than 20 years of legislation in Puerto Rico regarding liens on personal property. Puerto Rico's Commercial Transactions Act-to some extent-adopted the Uniform Commercial Code's modernization of the law governing commercial transactions, beginning with Act No. 208 of August 17, 1995. Act No. 21 of January 17 of 2012 updated the Uniform Commercial Code's Article 9. Almacenes Gigante's holding regarding pledges was rendered in 1993 under applicable law at that time period. Since the new law was enacted, the provisions of the Civil Code are inapplicable to the case at hand.
Id. at *4 n.6. The bankruptcy court then added: "[A]ll actual and potential creditors of the debtor are always on notice that the bank with which the debtor's deposit account is maintained may assert a claim against the deposit account." Id. at *4 (citation omitted). Lastly, the court observed that "if the parties have so agreed, the secured party may 'apply the balance of the deposit account to the obligation secured by the deposit account' in case of default." Id. (quoting P.R. Laws Ann. tit. 19, § 2367(a)(4) ).
THE APPEAL
I. Positions of the Parties
A. The Trustee
The Trustee asserts that the bankruptcy court erred in concluding that BPPR held a perfected security interest in the 1438 account under the PR UCC by virtue of its control over the 1438 account. In support, *142 the Trustee raises an argument here that she did not raise in the bankruptcy court-that the Debtor's "personal loan agreement" with BPPR was a consumer transaction, expressly excluded from the scope of the PR UCC by P.R. Laws Ann. tit. 19, § 2219(d)(13). The Trustee justifies the consumer transaction characterization by stating-also for the first time on appeal-that the Debtor used the loan proceeds to repay a personal loan, a VISA credit card balance, and other consumer debts. Thus, the Trustee contends, the underlying loan transaction falls within the definition of a consumer transaction under P.R. Laws Ann. tit. 19, § 2212(a)(26) and is not governed by the PR UCC.
In addition, the Trustee maintains that the bankruptcy court erred in ruling that control alone was sufficient to perfect BPPR's lien on the 1438 account against third parties. She argues that Puerto Rico's "authentic document requirement" is an "absolute rule," and thus, even if the pledge agreement was valid between BPPR and the Debtor, it was "not binding on the Trustee" because it was not notarized. The Trustee bolsters her argument by citing In re Santos & Nieves, Inc., 814 F.2d 57, 61 (1st Cir. 1987), where the court stated:
The law in Puerto Rico is clear in its statement that unauthenticated pledges are not effective against third parties. 31 L.P.R.A. § 5023.... An unauthenticated pledge agreement which is ineffective against third parties will necessarily be subordinate to the rights of the trustee, and may be avoided by the trustee pursuant to his powers under [ ] § 544(a)(1).
B. BPPR
BPPR argues that: (1) the provisions of the PR UCC, not the Civil Code of Puerto Rico, govern the creation of its security interest; (2) the 1438 account is a "deposit account" as defined in Section 9-102 of the PR UCC; and (3) BPPR "perfected its security interest through control" in accordance with the provisions of the PR UCC. In addition, BPPR asserts that the Trustee waived her "consumer transaction" argument by failing to raise it in the proceedings below. During oral argument and in its supplemental brief filed post-argument, BPPR also asserted that it had a right of setoff under Puerto Rico law, whether or not it had perfected its security interest in the 1438 account.
C. The Trustee's Reply
In response to the claim that her consumer transaction argument is late, the Trustee contends that she consistently argued in the proceedings below that the "Civil Code and its pledging provisions are the laws to be applied." In contrast, the Trustee points out, BPPR "neither raised an affirmative defense based on the PR UCC nor mentioned its applicability in the answer to the complaint." Citing Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 48, 49 (1st Cir. 2009), the Trustee insists that we should exercise our discretion to consider her consumer transaction argument. In Montalvo, the court noted the following factors to consider when deciding whether to permit an exception to the waiver principle: (1) whether the omission of an issue has deprived the appellate court of "useful factfinding"; and (2) whether the omitted argument was "highly persuasive" or "pivotal." Id. at 48 (citing Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627-28 (1st Cir. 1995) ).
We are mindful that exceptions to the raise-or-waive rule are reserved for rare cases. See Villafañe-Neriz v. F.D.I.C., 75 F.3d 727, 734 (1st Cir. 1996). We note, however, that whether a contention has or has not been raised previously is sometimes "a matter of degree." Montalvo, 587 F.3d at 48. Here and in the court below, the Trustee has consistently referred to the underlying transaction as a "personal *143 loan" and has insisted that the validity of the pledge agreement was governed by the Civil Code of Puerto Rico rather than the PR UCC.[11] The common thread running through the Trustee's arguments, below and on appeal, is that the pledge agreement is unenforceable under the Civil Code of Puerto Rico. In addition, as discussed below, the "consumer transaction" argument may be pivotal to the ultimate resolution of the parties' dispute. Therefore, under the standard articulated in Montalvo, supra, we exercise our discretion to entertain the omitted argument in this instance.[12]
JURISDICTION
We may hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees. See 28 U.S.C. §§ 158(a), (b), and (c) ; see also Bullard v. Blue Hills Bank, --- U.S. ----, 135 S.Ct. 1686, 1695, 191 L.Ed.2d 621 (2015). A decision is final if it ends the litigation "on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (1st Cir. BAP 1998) (citations omitted) (internal quotations omitted). Generally, an order granting summary judgment is a final order. Bullard, 135 S.Ct. at 1694 ; see also Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 458 (1st Cir. BAP 2017) ("An order granting summary judgment is a final order where no counts against any defendants remain.") (citation omitted) (internal quotations omitted). Here, the bankruptcy court granted summary judgment in favor of BPPR on both counts of the complaint. Therefore, the Order is final, and the Panel has jurisdiction to hear this appeal.[13]
STANDARD OF REVIEW
We review appeals from grants of summary judgment de novo. See *144 Prime Healthcare Servs.-Landmark LLC v. United Nurses & Allied Prof'ls, Local 5067, 848 F.3d 41, 45 (1st Cir. 2017). De novo review means that "the appellate court is not bound by the bankruptcy court's view of the law." Wiscovitch-Rentas v. Villa Blanca VB Plaza LLC (In re PMC Mktg. Corp.), 543 B.R. 345, 354 (1st Cir. BAP 2016) (citations omitted) (internal quotations omitted). Rather, we "may affirm on any independent ground made evident by the record." González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011) (citation omitted). Where, as here, there are cross-motions for summary judgment, "we employ the same standard of review, but view each motion separately, drawing all inferences in favor of the nonmoving party." Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014) (citation omitted).
DISCUSSION
I. The Applicable Standards
A. The Summary Judgment Standard
"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso ), 37 F.3d 760, 762 (1st Cir. 1994) ; see also Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 115 (1st Cir. 2011) (citations omitted). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); see also Fed. R. Bankr. P. 7056 ; Fed. R. Civ. P. 56 ; Soto-Rios, 662 F.3d at 115. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." In re Varrasso, 37 F.3d at 763 (citation omitted). "An issue is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex. rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010) (citation omitted). "A fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Id. at 5 (citation omitted) (internal quotations omitted).
"Under the protocols for summary judgment practice, '[t]he moving party bears the initial burden of informing the trial court of the basis for his motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any genuine issue of material fact.' " United States v. $ 100,000 in U.S. Currency, 305 F.Supp.3d 238, 245 (D. Mass. 2018) (citation omitted). "Once the moving party has satisfied his burden, the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Id. (citation omitted) (internal quotations omitted). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.' " Borges, 605 F.3d at 5 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). "If the nonmovant fails to make this showing, then summary judgment is appropriate." Id. (citation omitted) (internal quotations omitted).
"The same burdens exist on cross[-]motions for summary judgment." Skerry v. Mass. Higher Educ. Assistance Corp., 73 F.Supp.2d 47, 51 (D. Mass. 1999) (citations omitted). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."
*145 Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). On cross-motions for summary judgment, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden" under the summary judgment rule. $ 100,000 in U.S. Currency, 305 F.Supp.3d at 245 (citation omitted) (internal quotations omitted).
B. Section 544(a)
Commonly referred to as the "strong arm clause," § 544(a) empowers a trustee to avoid a transfer of property by the debtor that is voidable by a hypothetical lien creditor or by a hypothetical bona fide purchaser of the property. See 11 U.S.C. § 544(a) ;[14] see also Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392, 397 (1st Cir. BAP 2013). Therefore, "[u]nder § 544(a), a bankruptcy trustee can avoid a [lien] if it could be avoided by a hypothetical lien creditor or by a hypothetical BFP [ (bona fide purchaser) ] of the property." Hamilton v. Wash. Mut. Bank FA (In re Colon), 563 F.3d 1171, 1173-74 (10th Cir. 2009) (footnote omitted). "The status and rights of the hypothetical lien creditor and BFP are determined by state law." Id. at 1174 (citations omitted). A bankruptcy trustee may invoke § 544(a) to challenge a creditor's right to set off a debtor's bank account. See Barber v. Princeville State Bank (In re Ostrom-Martin, Inc.), 161 B.R. 800, 802 (Bankr. C.D. Ill. 1993). A trustee may also assert his § 544 strong arm powers to avoid a pledge on the grounds that it does not meet the requirements of Puerto Rico's "authentic document rule." See In re Almacenes Gigante, Inc., 159 B.R. at 642.
II. The Standards Applied
There are two fundamental questions at the heart of this appeal: (1) whether BPPR perfected a security interest in the 1438 account; and (2) whether BPPR was entitled to set off the funds on deposit in the 1438 account against the Debtor's loan obligations. These questions embody two independent but powerful credit protection devices available to bank lenders like BPPR-a security interest and a right to setoff. We begin our analysis with the first question.
A. Whether BPPR Perfected its Security Interest in the 1438 Account
1. Article 9 of the Puerto Rico Uniform Commercial Code
"The Model Uniform Commercial Code ('[Model] UCC') was created in 1952[.]" In re Nat'l Promoters & Servs., Inc., 499 B.R. 192, 200 (Bankr. D.P.R. 2013). Puerto Rico enacted Act No. 208 - the "Commercial Transactions Act"-codifying portions of the Model UCC on August 17, 1995. Id. Puerto Rico first adopted its version of Article 9 of the Model UCC about one year later, on September 19, 1996 ("Former *146 Article 9") through Act No. 241. Id. Former Article 9 remained in effect until January 17, 2013, when it was repealed and replaced with Puerto Rico's current version of the statute, P.R. Laws Ann. tit. 19, §§ 2211, et seq. ("Revised Article 9"). See Act of January 17, 2012, No. 21-2012 (H.B. 2965), 2012 P.R. Laws 1.
Like its Model UCC progenitor, one of the purposes of Puerto Rico's Commercial Transactions Act is to "expedite and facilitate [ ] banking transactions in Puerto Rico ... by creating uniformity and consistency[.]" In re Nat'l Promoters & Servs., Inc., 499 B.R. at 201 (citation omitted). The adoption of portions of the Model UCC, however, "did not negate Puerto Rico's civil law influence[.]" Id."Therefore, when a controversy falls outside the scope of Puerto Rico's Commercial Transactions Act, as expanded by Puerto Rico's Secured Commercial Transactions Act," courts must resort to other laws, including the Civil Code, P.R. Laws Ann. tit. 31, §§ 1, et seq. Id.
Here, the Debtor pledged the 1438 account to BPPR prior to the enactment of Revised Article 9, while BPPR's attempted enforcement of its alleged security interest occurred after that enactment. For reasons discussed later, this chronology compels us to examine Puerto Rico law governing perfection of security interests in deposit accounts both before and after the January 2013 revisions to Puerto Rico's Former Article 9.
2. The Law Governing Perfection of Security Interests in Deposit Accounts under Former Article 9
Assignments of deposit accounts were excluded from Former Article 9. See Marion N. Benfield, Consumer Provisions in Revised Article 9, 74 Chi.-Kent L. Rev. 1255, 1305 (1999) (discussing analogous text of the Model UCC). Section 2004(l) of Former Article 9 provided: "Sections 2001-2207 of this title do not apply to a transfer of an interest in any deposit account ... except as provided with respect to proceeds ... and priorities in proceeds ...." P.R. Laws Ann. tit. 19, § 2004(l) (1998) (repealed 2012). In light of this exclusion, we turn for guidance regarding the perfection of a security interest in a deposit account prior to the enactment of Revised Article 9 to the 1993 case of In re Almacenes Gigante, Inc., 159 B.R. at 641-42. There, a Puerto Rico bankruptcy court looked to Puerto Rico's Civil Code to assess whether a creditor bank had perfected the pledge of an interest in the debtor's deposit account, stating:
The Civil Code of Puerto Rico establishes the requirements for a valid pledge agreement in its Article 1756[.]
The following are essential requisites of the contracts of pledge and mortgage:
(1) That they be constituted to secure the fulfillment of a principal obligation.
(2) That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.
(3) That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for that purpose.
In re Almacenes Gigante, Inc., 159 B.R. at 641 (quoting P.R. Laws Ann. tit. 31, § 5001 ). The bankruptcy court also noted that in addition to the foregoing requirements, "it is necessary, in order to constitute the contract of pledge, that the pledge should be placed in possession of the creditor or of a third person by common consent." Id. (citing P.R. Laws Ann. tit. 31, § 5021 ). Lastly, the Almacenes Gigante court highlighted the Civil Code's authentication requirement expressed in *147 P.R. Laws Ann. tit. 31, § 5023, which provides that " '[a] pledge shall not be effective against a third person, when evidence of its date is not shown by authentic documents.' " Id. (quoting P.R. Laws Ann. tit. 31, § 5023 ). The authentic document requirement, the court observed, " 'is intended to be a formal and absolute rule.' " Id. (quoting In re Supermercados San Juan, Inc., 575 F.2d 8, 12 (1st Cir. 1978), and citing F.D.I.C. v. Shearson-Am. Exp., Inc, 996 F.2d 493, 500 (1st Cir. 1993) ). In Puerto Rico, an "authentic document is a legalized document, which is publicly attested ...." In re Supermercados of San Juan, Inc., 575 F.2d at 11. "A document verified before a notary is an authentic document[.]" Id.
In Almacenes Gigante, the bankruptcy court ruled that in the absence of an authentication evidencing the date of the pledge, the pledge in that case was unenforceable against third parties. 159 B.R. at 642. In reaching this conclusion, the bankruptcy court relied upon In re Santos & Nieves, Inc., 814 F.2d at 60, where the U.S. Court of Appeals for the First Circuit had similarly ruled that "[f]or a pledge to be effective against third parties, [ ] evidence of its date must appear in an authentic document."
In light of the foregoing, we conclude that prior to January 17, 2013, when Former Article 9 was operative in Puerto Rico, authentication was required for a pledge of a deposit account to be enforceable against third parties.
3. Perfecting Security Interests in Puerto Rico Deposit Accounts in Non-consumer Transactions after the Enactment of Revised Article 9
"Revised Article 9 includes numerous new provisions designed to clarify the proper treatment of Article 9 security interests in deposit accounts." Ben Carpenter, Security Interests in Deposit Accounts and Certificates of Deposit under Revised UCC Article 9, 55 Consumer Fin. L. Q. Rep. 133, 133 (2001) (discussing the uniform text of Article 9 of the revised Model UCC, effective July 1, 2001).[15] Under Revised Article 9, the law "govern[ing] perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account" is the law of the "bank's jurisdiction." P.R. Laws Ann. tit. 19, § 2254(b); see also Carpenter, supra, at 133-34.
Revised Article 9 is broad in scope. As evidence of this breadth, § 2219(a)(1) of Revised Article 9, which became effective January 17, 2013, provides, in relevant part: "Except as otherwise provided in subsections (c) and (d), this chapter applies to: [a] transaction, regardless of its form , that creates a security interest in personal property ...." P.R. Laws Ann. tit. 19, § 2219(a)(1) (emphasis added).[16] Official Comment 2 to U.C.C. § 9-109 (after which § 2219(a)(1) of Revised Article 9 is modeled) also sheds light on the scope of Revised Article 9, stating, in part: "Under subsection (a)(1), all consensual security interests in personal property and fixtures are covered by this Article, except for transactions excluded by *148 subsections (c) and (d)." U.C.C. § 9-109 cmt. 2. Section 2219(d)(13) of Revised Article 9 (discussed in detail later)-as well as U.C.C. § 9-109(d) -explicitly except deposit accounts given as collateral in consumer transactions from that article's scope. See P.R. Laws Ann. tit. 19, § 2219(d)(13); U.C.C. § 109(d)(13). It follows, then, that P.R. Laws Ann. tit. 19, § 2219(a)(1) governs security interests in deposit accounts as original collateral only in commercial transactions. See Elaine A. Welle, An Introduction to Revised Article 9 of the Uniform Commercial Code, 1 Wyo. L. Rev. 555, 586 (2001) (interpreting § 9-109(a), the Model UCC's counterpart to this section, as including security interests in deposit accounts given in commercial transactions); Carpenter, supra, at 133 (same); Bruce Markell, From Property to Contract and Back: An Examination of Deposit Accounts and Revised Article 9, 74 Chi.-Kent L. Rev. 963, 976-77 (1999) (same). Official Comment 16 to the U.C.C. supports this interpretation. It states: "Except in consumer transactions, deposit accounts may be taken as original collateral ...." U.C.C. § 9-109 cmt. 16. Revised Article 9 defines a "deposit account" as "a demand, time, savings, passbook, or similar account maintained with a bank." P.R. Laws Ann. tit. 19, § 2212(a)(29).
There is no dispute in this case that the 1438 account qualifies as a deposit account. Hence, so long as the transaction between the Debtor and BPPR was commercial in nature, Revised Article 9's deposit account provisions would apply.
To perfect a security interest in a deposit account given as original collateral in a commercial transaction, under Revised Article 9, the secured party must obtain "control." See Carpenter, supra, at 137. P.R. Laws Ann. tit. 19, § 2262(b)(1) provides, in relevant part: "Except as otherwise provided in subsections (c) and (d) of § 2265 of this title for proceeds [a] security interest in a deposit account may be perfected only by control under § 2264 of this title[.]" P.R. Laws Ann. tit. 19, § 2262(b)(1). P.R. Laws Ann. tit. 19, § 2264(b) further provides, in relevant part, that "[a] security interest in deposit accounts ... remains perfected by control only while the secured party retains control." P.R. Laws Ann. tit. 19, § 2264(b). "If the secured party is the depositary bank, it has control over a deposit account it maintains and its security interest is automatically perfected." Welle, supra, at 565 (citing, inter alia, U.C.C. § 9-104 cmt. 3).
In addition, Revised Article 9 provides collection remedies for creditors with a security interest in a deposit account as follows:
If so agreed, and in any event after default, a secured party:
(4) if it holds a security interest in a deposit account perfected by control under § 2265(a)(1) of this title, may apply the balance of the deposit account to the obligation secured by the deposit account ....
P.R. Laws Ann. tit. 19, § 2367(a)(4).
4. Perfecting Security Interests in Puerto Rico Deposit Accounts in Consumer Transactions after the Enactment of Revised Article 9
The foregoing provisions do not apply to security interests in deposit accounts in consumer transactions. In 2013, Revised Article 9 of the PR UCC adopted the exception for the assignment of deposit accounts in consumer transactions codified in the Model UCC over a decade earlier. P.R. Laws Ann. tit. 19, § 2219(d)(13) specifically provides: "This chapter does not apply to an assignment of a deposit account in a consumer transaction ...."
*149 P.R. Laws Ann. tit. 19, § 2219(d)(13).[17] The PR UCC defines a "consumer transaction" as
[A] transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes. The term includes consumer-goods transaction.
P.R. Laws Ann. tit. 19, § 2212(a)(26).
Comment 16 to Model UCC § 9-109 explains:
By excluding deposit accounts from the Article's scope as original collateral in consumer transactions, subsection (d)(13) leaves those transactions to law other than this Article. However, in both consumer and non-consumer transactions, sections 9-315 and 9-322 apply to deposit accounts as proceeds and with respect to priorities in proceeds.
U.C.C. § 9-109 cmt. 16. The exception makes clear that
although a security interest in a deposit account in a consumer transaction initially is excluded from Article 9, a security interest in the deposit account which represents proceeds of other collateral is not excluded simply because the other collateral's character has changed. Otherwise the debtor could frustrate secured creditors by the simple expedient of selling collateral subject to a security interest and depositing the monies into a bank account.
Frederick H. Miller & Carl S. Bjerre, 9A Hawkland UCC Series § 9-109:17 (William Henning & Carl S. Bjerre eds., 2018).
5. Whether Former Article 9 or Revised Article 9 Governs the Enforcement of BPPR's Security Interest
Because relevant activities of the parties in this case occurred both before and after the enactment of Revised Article 9, the question arises as to which version of Article 9 to apply. Generally, security interests created before the effective date of the revisions to Article 9 of the U.C.C. "are now enforced in accordance with the default rules found in revised Article 9." Eldon H. Reiley, Transition to Revised Article 9: Post-effective Date Issues, 2 Sec. Interests in Pers. Prop. § 38:3 (2018). The authority for this conclusion is found in P.R. Laws Ann. tit. 19, § 2402, the "Savings Clause," which provides, in part: "Except as otherwise provided in this subchapter, this act applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before this act takes effect." P.R. Laws Ann. tit. 19, § 2402(a). There are two important exceptions to the rule that enforcement actions during the "post-effective date period" are governed by Revised Article 9: (1) actions commenced prior to the effective date of Revised Article 9 (see P.R. Laws Ann. tit. 19, § 2402(c) ); and (2) liens not within the scope of Former Article 9 (see P.R. Laws Ann. tit. 19, § 2402(b) ).[18] Reiley, supra. That is, "if a *150 pre-effective date lien is created under law other than Article 9, and if that lien is within the expanded scope of [R]evised Article 9, an option is available to enforce such lien under either [R]evised Article 9 or under the original law." Id.
The enforcement option of P.R. Laws Ann. tit. 19, § 2402(b) is significant-especially with respect to security interests in deposit accounts, which were excluded from Former Article 9. With respect to such interests, the Official Comment to U.C.C. § 9-702 (the Model UCC's analogue to P.R. Laws Ann. tit. 19, § 2402(b) ) explains: "[T]hese transactions ... retain their validity under [Article 9] and may be terminated, completed, consummated, and enforced under this Article. However, these transactions also may be "terminated, completed, consummated, and enforced by the law that otherwise would apply had this Article not taken effect." U.C.C. § 9-702 cmt. 1.
6. Applying Former Article 9 vs. Revised Article 9
Under P.R. Laws Ann. tit. 19, § 2402, the facts of this case presented the bankruptcy court with the option to apply either Former Article 9 or Revised Article 9 in determining whether BPPR's enforcement of its claimed security interest in the 1438 account was valid. If the bankruptcy court had applied Former Article 9, which excludes security interests in all deposit accounts, then in light of the lack of notarization of the pledge agreement and under Almacenes Gigante, BPPR's pledge would have been subject to avoidance by the Trustee. If, on the other hand, the bankruptcy court chose to apply Revised Article 9, which governs security interests in deposit accounts, the outcome would depend on whether the Debtor's pledge of the 1438 account was part of a consumer or commercial transaction. If the former, Revised Article 9 would remain inapplicable, and Almacenes Gigante would continue to supply the relevant perfection requirements, including authentication, among others, thereby rendering the pledge voidable. But, if the transaction was commercial in nature, then the control requirements of P.R. Laws Ann. tit. 19, § 2262(b) would validate BPPR's security interest and enable it to fend off the Trustee's attack.
The record indicates that the bankruptcy court did not consider the alternative enforcement options provided in the Savings Clause, P.R. Laws Ann. tit. 19, § 2402(b). As a result, the bankruptcy court's rejecting the applicability of Almacenes Gigante may have been erroneous. In light of the provisions of the Savings Clause, the perfection requirements articulated in that case-including the authentication requirement-could have been dispositive as to the outcome below. In addition, the bankruptcy court did not consider whether the underlying transaction in this case was a consumer or commercial transaction. The record before us is insufficiently developed to enable us to resolve the question.[19] For these reasons, we are unable to affirm the bankruptcy court's order that BPPR's security interest in the 1438 account was not subject to avoidance by the Trustee.
*151 B. Whether BPPR was Entitled to Set off the Funds in the 1438 Account
1. The Legal Standards Governing Setoff
The remaining question is whether BPPR, irrespective of its status as a secured creditor, had the right, as a bank where a borrower's funds were on deposit, to offset those funds against the borrower's obligation.[20]
Setoff is "a form of payment [where] the medium of payment is a reduction or extinguishment of a separate claim." William Hillman & Margaret Crouch, Bankruptcy Deskbook § 6:6.1 (4th ed. 2014). A setoff "occurs when the two debts-the one owed from the debtor and the one owed to the debtor-arise out of separate transactions." Id.
"The right of a creditor to set off a prepetition debt owed the debtor against a prepetition claim against the debtor is provided for in [§] 553[.]" First Union Nat'l Bank of Fla. v. Abbey Fin. Corp. (In re Abbey Fin. Corp.), 193 B.R. 89, 97 (Bankr. D. Mass. 1996). That section states, in part:
(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ....
11 U.S.C. § 553(a).
" Section 553 does not create a right of setoff; it merely preserves the rights available under state law ...." In re Abbey Fin. Corp., 193 B.R. at 97 ; see also Bower v. Deickler (In re Deickler), No. 98-11502-JMD, 1999 WL 33457772, at *6 (Bankr. D.N.H. July 22, 1999) (citing Pub. Serv. Co. of N.H. v. N.H. Elec. Coop. (In re Pub. Serv. Co. of N.H.), 884 F.2d 11, 14 (1st Cir. 1989) ). Nor does Article 9 of the U.C.C. create setoff rights. Markell, supra, at 1005 n.226. As the First Circuit observed, " 'a right of set-off is not a security interest.' " United States v. Fleet Bank of Mass. (In re Calore Exp., Co.), 288 F.3d 22, 47 (1st Cir. 2002) (quoting Grant Gilmore, Security Interests in Personal Property § 10.7, at 315-16 (1965) ).[21] Moreover, "Article 9's drafters excluded the right of set-off because it arises by operation of law rather than by consent-Article 9 covers only consensual arrangements." Demitropoulos v. Bank One Milwaukee, N.A., 953 F.Supp. 974, 983 n.14 (N.D. Ill. 1997) (citations omitted).
P.R. Laws Ann. tit. 31, § 3221 provides for setoff, stating: "Compensation shall take place when two (2) persons, in their own right, are mutually creditors and debtors of each other."[22]
*152 P.R. Laws Ann. tit. 31, § 3221. The requirements for setoff under Puerto Rico law are set forth in P.R. Laws Ann. tit. 31, § 3222, which provides:
In order that compensation may be proper, it is required:
(1) That each of the persons bound should be so principally, and that he be at the same time the principal creditor of the other.
(2) That both debts consist of a sum of money or, when the things due are perishable, that they be of the same kind and also of the same quality, if the latter should have been stipulated.
(3) That both debts are due.
(4) That they be determined and demandable.
(5) That none of them is subject to any retention or suit instituted by a third person, and of which due notice has been given the debtor.
P.R. Laws Ann. tit. 31, § 3222.
A "voluntary setoff may arise from a covenant between the parties," for instance, when a bank exercises its right created in a contractual agreement to "compensate any liability due to the bank by their depositor against any of its deposits in the bank." Villafañe Neris v. Citibank, N.A., 845 F.Supp. 930, 934 (D.P.R. 1994) (internal quotations omitted). Moreover, a bank is allowed to set off funds deposited in a debtor's general account against amounts owed to it by the depositor. In re Almacenes Gigante, Inc., 159 B.R. at 643 ; see also Villafañe Neris, 845 F.Supp. at 934 ; In re Ben Franklin Retail Store, Inc., 202 B.R. 955, 957 (Bankr. N.D. Ill. 1996) (same).
If, however, a fund is deposited for a "special purpose" it is held in trust for the depositor, rather than "owed to the depositor." In re Almacenes Gigante, Inc., 159 B.R. at 643 (citations omitted); see also In re Ben Franklin Retail Store, Inc., 202 B.R. at 957. "Because of this distinction, the requisite mutuality of obligation is not present with special purpose funds and [setoff] is not permitted." In re Ben Franklin Retail Store, Inc., 202 B.R. at 957 (citing United States v. Butterworth-Judson Corp., 267 U.S. 387, 45 S.Ct. 338, 69 L.Ed. 672 (1925) ; In re Almacenes Gigante, Inc., 159 B.R. at 643 ) ); see also Constructora Maza, Inc., 616 F.2d at 579 (ruling bank's right to setoff "is limited to deposits made in good faith, in the ordinary course of business, and subject to withdrawal at the will of the depositor"). As the bankruptcy court explained in Almacenes Gigante:
In general, where the liability of the one claiming a setoff arises from a fiduciary duty or is in the nature of a trust, the requisite mutuality of debts does not exist, and such person may not set off a debt owing from the debtor against such liability. Thus, when a bank holds funds of the debtor in a special account, known by the bank to be dedicated to a special use, the bank cannot set off those funds against its claim against the debtor.
159 B.R. at 643 (quoting 4 Lawrence P. King et al., Collier on Bankruptcy ¶ 553.15[1] at 553-25, 553-26 (15th ed. 1993) ). There, the bankruptcy court found the requisite mutuality of obligations lacking, as the pledged funds in a deposit account were unavailable to the debtor. Id. Accordingly, the pledge agreement was unenforceable against the trustee. Id.
2. The Setoff Standard Applied
Here, the bankruptcy court did not make any findings on the issue of whether the 1438 account qualified as a general deposit account or a special purpose account. Having concluded its analysis with a *153 determination that BPPR's security interest was perfected in accordance with the PR UCC and thus BPPR as a secured creditor was entitled to apply the funds in the 1438 account upon the Debtor's default, the bankruptcy court did not need to consider or apply the setoff requirements of Puerto Rico's Civil Code discussed above. See In re Cruz Rivera, 2018 WL 3702481, at *4.
Our own examination of the record reveals no dispute between the parties that the funds on deposit in the 1438 account were unavailable to the Debtor for withdrawal at will. In her statement of uncontested facts, the Trustee represented that the funds were "frozen" and unavailable "for use or withdrawal" until the Debtor paid off the loan. Consistent with this representation, BPPR acknowledged in its statement of uncontested facts that it had placed "a hold" on the 1438 account "for a total amount of $ 31,434.17 as [a] guarantee" for the loan. Because the 1438 account was a special account, the requisite mutuality was not present and setoff was not permitted. See In re Ben Franklin Retail Store, Inc., 202 B.R. at 957. The Trustee was, therefore, entitled to summary judgment with respect to the setoff issue. The difficulty, however, is that if BPPR's security interest in the 1438 account was valid and unavoidable by the Trustee, the unavailability of setoff rights becomes irrelevant. This was the conclusion of the bankruptcy court, but we are unable to determine if it was properly reached.
CONCLUSION
While we conclude that BPPR could not exercise setoff rights against the 1438 account, we are unable to conclude from the record before us whether BPPR's security interest in the account was avoidable by the Trustee. We, therefore, VACATE the Order as to count I and REMAND to the bankruptcy court for further proceedings consistent with this opinion, including consideration of: (1) the effect of the Savings Clause on this case; and (2) whether the Debtor's pledge of the 1438 account was given in connection with a consumer or commercial transaction. Count II is AFFIRMED on waiver grounds.

Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

The factual background set forth herein is undisputed, having been taken from the statements of uncontested facts the parties submitted in connection with the summary judgment proceedings below.

The Trustee cited § 553 as the basis for her claim. For a discussion of § 553, see below.

The Trustee appended to the statement of uncontested facts several Spanish-language exhibits but did not include certified translations. She also attached a single English-language document-her own Unsworn Declaration under Penalty of Perjury, in which she stated that she learned at the meeting of creditors under § 341 that the funds had been "frozen for ten (10) years."

Presumably, the Trustee sought to avoid the purported lien created by that agreement.

The Trustee had not raised the invalidation of the pledge agreement in her complaint but, as noted below, BPPR treated this claim as having been pled, thereby allowing the bankruptcy court to consider it.

An examination of the bankruptcy court docket reveals that BPPR submitted only Spanish-language documents without certified translations as exhibits to the cross-motion. See U.S. Bank N.A. v. Blais (In re Blais), 512 B.R. 727, 730 n.2 (1st Cir. BAP 2014) (stating the Panel "may take judicial notice of the bankruptcy court's docket and imaged papers") (citations omitted).

By engaging with the Trustee over the issue of authentication at the summary judgment stage, BPPR has dispelled any concern we otherwise might have had regarding the Trustee's failure to previously articulate her authentication argument in the complaint. See Cruz-Acevedo v. Toledo-Dávila, No. 07-2104 JAF, 2009 WL 2151295, at *6 (D.P.R. July 15, 2009) ("[A] new 'claim may be actually introduced outside of the complaint ... and then treated by the opposing party as having been pleaded, either through his effective engagement of the claim or through his silent acquiescence.' ") (citation omitted) (internal quotations omitted).

P.R. Laws Ann. tit. 19, § 2290 does not "establish" a right of setoff. See below regarding the origin of setoff rights. Rather, that provision, entitled "Effectiveness of right of recoupment or set-off against deposit account," relates to the priority of interests in deposit accounts. See P.R. Laws Ann. tit. 19, § 2290.

In rendering its decision, the bankruptcy court did not consider any of the Spanish-language documents the parties submitted in connection with their summary judgment motions. This is consistent with the English-language rule. See 48 U.S.C. § 864 (stating "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language"); see also Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004) ("In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials."). Moreover, although the Trustee furnished translations of the Spanish-language exhibits to the summary judgment motion on appeal-including English-language versions of the note and pledge agreement-we may not consider them for two reasons. First, our review is limited to the evidentiary record compiled in the bankruptcy court. See Crefisa, Inc. v. Wash. Mut. Bank, F.A. (In re Colonial Mortg. Bankers Corp.), 186 F.3d 46, 49-50 (1st Cir. 1999). Second, the First Circuit has made it clear that "translation after the fact cannot retrospectively alter the record." Estades-Negroni, 359 F.3d at 2 (citation omitted). Therefore, like the bankruptcy court, we limit our consideration to the facts set out in the parties' respective statements of uncontested facts.

By noting the Trustee's "personal loan" characterization, we are not suggesting that the terms "personal loan" and "consumer transaction" are synonymous.

Resolving the question of whether the Trustee has sufficiently preserved her consumer transaction argument for appeal purposes is a close call, especially when we consider that the Trustee's failure to explicitly and timely raise the issue below might have contributed to the bankruptcy court's omission of any findings of fact on this issue. We note, however, that even if we were to conclude that the Trustee had waived the argument, the nature of de novo review would nonetheless require us to reach the issue of whether the bankruptcy court correctly determined, as a matter of law, that the PR UCC governs, or whether the underlying transaction is excluded from the scope of the PR UCC. See Knight Kitchen Music v. Pineau (In re Pineau), 149 B.R. 239, 241 (D. Me. 1993) (stating that when the standard of review is de novo and relevant facts are undisputed, "the only subjects of review are the bankruptcy court's conclusions of law"). Indeed, it would be impossible to fully examine the correctness of the bankruptcy court's legal conclusion (or BPPR's assertion that the PR UCC is the controlling law) without consideration of this issue.

Although the bankruptcy court did not memorialize the judgment in a separate document as required by Fed. R. Civ. P. 58, that omission does not alter our finality assessment. See Fed. R. Civ. P. 58(a). The Supreme Court has ruled that the separate-document requirement of Fed. R. Civ. P. 58 may be waived where the parties are not misled and the lower court "evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case."Bankers Tr. Co. v. Mallis, 435 U.S. 381, 387, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Here, the bankruptcy court made clear that its work was complete and BPPR did not object to the taking of the appeal in the absence of a separate judgment. See id. at 387-88, 98 S.Ct. 1117. Under these circumstances, we have jurisdiction, even in the absence of a separate document.

Section 544(a) provides, in relevant part:
The trustee ... may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
....
(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
11 U.S.C. § 544(a).

There is a dearth of case law and secondary source material regarding the deposit account provisions of Revised Article 9. Because Revised Article 9 substantially parallels the uniform text of the Model UCC, articles written about that legislation inform our understanding of its Puerto Rico counterpart.

P.R. Laws Ann. tit. 19, § 2219(e) further provides: "The provisions of the Civil Code of Puerto Rico with respect to pledges and transmissions of credits shall not apply to transactions governed by this chapter." See P.R. Laws Ann. tit. 19, § 2219(e).

This provision mirrors the language of Model UCC § 9-109(d)(13).

P.R. Laws Ann. tit. 19, § 2402(b) provides:
Except as otherwise provided in subsection (c) and §§ 2403-2409 of this title:
(1) Transactions and liens that were not governed by former Chapter 9 of the Commercial Transactions Act, were validly entered into or created before this act takes effect, and would be subject to this chapter if they had been entered into or created after this act takes effect, and the rights, duties, and interests flowing from those transactions and liens remain valid after this act takes effect, and
(2) the transactions and liens may be terminated, completed, consummated, and enforced as required or permitted by this chapter or by the law that otherwise would apply if this chapter had not taken effect.
P.R. Laws Ann. tit. 19, § 2402(b)(1)-(2).

The Trustee's reliance on the characterization of the transaction as a "personal loan" is not an adequate basis upon which to conclude it was a consumer transaction as defined in the PR UCC.

The bankruptcy court impliedly answered this question in the affirmative, stating: "[I]f the parties have so agreed, the secured party may 'apply the balance of the deposit account to the obligation secured by the deposit account' in case of default." In re Cruz Rivera, 2018 WL 3702481, at *4 (quoting P.R. Laws Ann. tit. 19, § 2367(a)(4) ). Thus, without explicitly employing the term, "setoff," the bankruptcy court concluded that BPPR properly applied funds from the 1438 account to satisfy the Debtor's obligation.

One commentator cautioned: "[I]n enforcement of remedies, the depositary bank may wish to be clear about how it is proceeding; proceeding under a security interest brings with it the obligation to proceed in a commercially reasonable way. ... Setoff rights are not similarly regulated by Revised Article 9." Markell, supra, at 1005 n.226.

"Compensation" is Puerto Rico's equivalent of setoff. Phico Ins. Co. v. Pavia Health, Inc., 413 F.Supp.2d 76, 83 n.5 (D.P.R. 2006) ; see also United Structures of Am., Inc. v. G.R.G. Eng'g, S.E., 9 F.3d 996, 1000 (1st Cir. 1993).